**MIAMI INTERNATIONAL REALTY CO., Plaintiff,**

v.

**TOWN OF MT. CRESTED BUTTE, COLORADO, et al., Defendants.**

Civ. A. No. 83–K–25.

United States District Court, D. Colorado.

Jan. 23, 1984.

B. Lawrence Theis, Walters & Theis, Denver, Colo., Robert F. Hill, and Bobbee J. Musgrave, Hill & Robbins, Denver, Colo., for plaintiff.

Hugh A. Burns, and Phillip S. Figa, Denver, Colo., Harrison F. Russell, Gunnison, Colo., for Crested Butte Mountain Resort, Inc.

Richard P. Slivka, and David L. Dain, Denver, Colo., for Mt. Crested Butte, James Dean, Richard Paynter and Robert Pino.

Ptarmigan Associates, Inc., pro se.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Before me are three motions in this complex antitrust and civil rights case: plaintiff's to strike certain defenses and for partial summary judgment, and defendants' to dismiss three of the five claims for relief. The issues presented have been extensively and exhaustively briefed. Since oral argument would add nothing of substance to the delineation of the issues, I am prepared to rule.

## FACTUAL BACKGROUND

Miami International is a Florida corporation. In late 1979 it entered into a joint venture agreement with some of the owners of the Eagles Nest Condominiums in Mt. Crested Butte, Colorado. By the terms of the agreement Miami was to market and sell time sharing intervals in the condominiums. Miami sought to effectuate this agreement by both national and local advertising. Its local advertising included in-person solicitations, canned speeches, leaflets, and wine and cheese parties. A great portion of these activities occurred in and about the town of defendant Mt. Crested Butte.

Mt. Crested Butte is not a large town. During the height of the ski season its population is swelled by thousands, many

of whom, when not skiing, cluster and congregate in the heart of town. This area, known locally as the base area, has been a source of concern to the citizenry and council for a number of years. Traffic jams, pollution and a lack of proper sidewalks are the most visible problems.

The dispute between Miami and the city fathers can best be understood against the backdrop of exponential growth Mt. Crested Butte area has experienced in the past decade. With that growth came congestion, pollution and questions about the quality of life. The extent and manner in which future growth would be regulated exercised newspapers, politicians, citizens and visitors alike. Not surprisingly, Miami's interval ownership sales techniques were questioned and, in some cases, sharply criticized.

In April, 1982, Miami became concerned about the scope of several uncontested ordinances which might affect its ability to carry out its in-person solicitations. It therefore sought written permission from defendant Dean, Mt. Crested Butte's town manager, to conduct its soliciting in the Mt. Crested Butte base area. On April 6, 1982, however, the Mt. Crested Butte town council ended Miami's uncertainty by passing an anti-solicitation ordinance which made it illegal for anyone to solicit, peddle or hawk anything of value upon certain rights-of-way within the town of Mt. Crested Butte.[1] The right-of-way limitation is significant in this case because the town rights-of-way extend from the property lines on each side of the streets in the base area of the town. The ordinance made it impossible for Miami to continue its local advertising as it had planned.

Miami filed its complaint in this court on January 6, 1983 seeking damages and declaratory and injunctive relief to prevent the city from enforcing its anti-solicitation ordinance. I held an evidentiary hearing on February 9, 1983. Thereafter, I granted the plaintiff's motion for a preliminary injunction and held that defendants could not enforce the 1982 ordinance against Miami. In emergency session on February 15, 1983, Mt. Crested Butte passed an amend-

---

1. The ordinance, passed April 6, 1982, amended Chapter III. Article I of the town's ordinances by adding the following section 3-1-4:

WHEREAS, the Crested Butte Ski Area is located in the town, attracting thousands of skiers and tourists into the town and into what is known as the Base Area of the Town; and

WHEREAS, the Town has replatted such Base Area, rearranging the streets, pedestrian ways, and parking in such Base Area, and

WHEREAS, there is heavy congestion of pedestrians and vehicular traffic in such Base Area, and the Town believes that it would not be safe to allow solicitors and peddlers to ply their trades within such heavily congested areas, and

WHEREAS, the Town has the power to regulate the streets and to protect the public and the use of streets for ordinary purposes of travel, and has the power to prevent public nuisances, and does believe that the prohibiting of solicitors within these heavily congested areas has a substantial relation to the safety, health and general welfare of the public.

NOW, THEREFORE, BE IT ORDAINED BY THE TOWN COUNCIL OF THE TOWN OF MT. CRESTED BUTTE, COLORADO, AS FOLLOWS:

CHAPTER III, ARTICLE I of the Ordinances of the Town of Mt. Crested Butte, Colorado, shall be, and hereby is, amended by the addition of the following Section 3-1-4, Prohibited Areas:

SECTION 3-1-4—Prohibited Areas

It shall be unlawful for any person, firm, or corporation to engage in the business of solicitor, hawker, or peddler of any merchandise, article, or thing of value, or for any solicitor, peddler, hawker, itinerant merchant, or transient vendor, whether licensed or not, to conduct his business or solicit patronage therefor, actively or passively, upon the following rights-of-way within the Town of Mt. Crested Butte:

(a) The Gothic county Road, from the southern Town boundary to Whetstone Road;

(b) Treasury Road, from the Gothic County road to Emmons Road;

(c) Emmons Road;

(d) Emmons Loop;

(e) Snowmass Road;

(f) Hunter Hill Road from Gothic Road to Snowmass Road.

Due to the above referenced heavy traffic and pedestrian congestion in the above described prohibited areas, and because the Town believes that persons soliciting within such areas in the past have presented a clear and present danger to such traffic and to themselves, the Town Council hereby declares that this Ordinance should be passed for the preservation of public property, health, welfare, peace and safety, and is therefore an emergency ordinance.

ed ordinance repealing the 1982 ordinance. With fewer restrictions and clearer defini-

tions, the 1983 ordinance prohibited the same conduct as that passed in 1982.[2] I

**2.** The 1983 ordinance is as follows:

WHEREAS, the Crested Butte Ski Area is located in the Town, attracting thousands of skiers and tourists into the Town and into what is known as the Base Area of the Town; and

WHEREAS, the Town has replatted such Base Area, rearranging the streets, pedestrian ways, and parking in such Base Area; and

WHEREAS, there is heavy congestion of pedestrians and vehicular traffic in such Base Area, and the Town believes that it would not be safe to allow solicitors and peddlers to ply their trades within such heavily congested areas; and

WHEREAS, it has come to the Town Council's attention that there is a problem or potential problem with the harassment and annoyance of tourists and visitors in the streets, roadways and rights-of-way of the Town, and the Council finds that such intrusive conduct constitutes a public nuisance, interferes with the Town's natural and desirable characteristics, and thereby has a potential detrimental affect on tourism in the Town; and

WHEREAS, the Council finds that the promotion of tourism for Mt. Crested Butte will promote the Town's general welfare; and

WHEREAS, the Town has the power to regulate the streets and to protect the public and the use of streets for ordinary purposes of travel, and has the power to prevent public nuisances, and does believe that the prohibiting of solicitors within these heavily congested areas has a substantial relation to the safety, health and general welfare of the public; and

WHEREAS, the lack of sidewalks and public sidewalks within the Town poses a danger to the pedestrians, which danger is increased when the streets or roadways are affected by snow and/or ice.

NOW, THEREFORE, BE IT ORDAINED BY THE TOWN COUNCIL OF THE TOWN OF MT. CRESTED BUTTE, COLORADO, AS FOLLOWS:

CHAPTER III, ARTICLE I of the Ordinances of the Town of Mt. Crested Butte, Colorado, shall be, and hereby is, amended by the addition of the following Sections:

*Section 1.* Ordinance No. 4, Series 1982, is hereby repealed in its entirety.

*Section 2.* Section 3–1–2, *Definitions,* is hereby amended by the addition of the following sub-paragraphs:

(f) Solicitor. The term "solicitor" is to be limited to a person engaged in the acts of commercial solicitation as defined herein when said person is, or may be, receiving some form of compensation or in any way is employed by, represents or is associated with the promoted business opportunity or item.

(g) Commercial Solicitation. A person is engaged in the act of commercial solicitation when by his conduct that person approaches or attempts to get the attention of another or others in order to promote a business, opportunity

or item commercial in nature. Said act may be either oral, written or assertive conduct. By way of example, but not as any limitation, said acts include: the distribution of cards, handbills or pamphlets; and oral invitations or statements intended to induce or inform others of a business opportunity or item.

(h) Commercial. The term "Commercial" relates to or is connected with trade and traffic or commerce in general.

(i) Rights of Way. The Town shall, immediately upon passage of this Ordinance, cause signs to be installed along the rights of way of those streets and roads designated in Section 3 herein (Section 3–1–4 of the Town Code), identifying where the exterior boundaries of such rights of way are located on both sides of such streets and roads. "Rights of way" as used herein shall include all portions of said streets and roads located between said rights of way signs.

(j) All words not expressly defined herein are to be construed in accordance with the statutory and case law of the State of Colorado.

*Section 3.* The following Section 3–1–4 is hereby added to the Town Code:

3–1–4 *Prohibited Areas*

It shall be unlawful for any person, as defined above, to engage in the business of solicitor or peddler of any merchandise, article, or thing of value, or for any solicitor, peddler, or transient vendor, whether licensed or not, to conduct his business or solicit patronage therefore upon or within the rights-of-way of the following roads within the Town of Mt. Crested Butte between the hours of 8:00 AM and 6:00 PM, local time, during the ski season, defined as those continuous days that the Crested Butte Mountain Resort, Inc.'s Mt. Crested Butte, Colorado, ski area is open for public skiing under its U.S. Forest Service permits:

(a) The Gothic County Road, from the southern Town boundary to the Whetstone Road;

(b) Treasury Road, from the Gothic County Road to Emmons Road;

(c) Emmons Road;

(d) Emmons Loop;

(e) Snowmass Road;

(f) Hunter Hill Road from Gothic Road to Snowmass Road.

*Section 4.* This Ordinance expressly excludes any vehicle used for transportation, and properly licensed, in which a commercial solicitation is made to any passengers therein.

*Section 5. Emergency Provision.* Due to the above referenced heavy traffic and pedestrian congestion in the above described prohibited areas, and because the Town believes that persons soliciting within such areas in the past have presented a clear and present danger to such traffic and to themselves, the Town Council hereby declares that this Ordinance should

denied plaintiff's motion to modify the preliminary injunction on March 21, 1983, after hearing additional testimony on February 23, 1983.

In an amended complaint, Miami added as defendants the following entities and individuals: Crested Butte Mountain Resort, Inc., a Colorado corporation which owns and operates the Crested Butte ski area; James Dean, Mt. Crested Butte's town manager; Robert Pino, a member of the town council and a licensed real estate broker associated with defendant Ptarmigan Associates, Inc.; Tim Currin, a licensed real estate broker associated with Ptarmigan Associates, Inc.; and Ptarmigan Associates, Inc.

Against these defendants five claims for relief are made, based upon the following statutory and constitutional provisions: 15 U.S.C. § 1, the Sherman Act; the First Amendment; Article I, § 10 of the Constitution, the Bill of Attainder clause; 42 U.S.C. § 1985(3); and 42 U.S.C. § 1983.

### MOTION TO DISMISS

Crested Butte Mountain Resort, Inc. (CBMR) moves to dismiss counts I (Sherman Act), IV (§ 1985(3)), and V (§ 1983). Defendants Mt. Crested Butte, Dean, Paynter and Pino have joined in the motion. For the reasons discussed below, I deny the motion as to count I, grant it and dismiss with prejudice as to count IV, and grant the motion with leave to amend as to count V.

### Count I

CBMR's motion to dismiss presents a deceptively narrow issue: Did the restraints purportedly placed on Miami's business of selling time-share intervals substantially and adversely affect interstate commerce so as to confer subject matter jurisdiction on this court?[3]

To defeat a motion to dismiss for lack of subject matter jurisdiction, a plaintiff must make factual allegations which, if proved, would sustain each of three underlying findings: (i) the *presence* of interstate commerce; (ii) the existence of a *substantial and adverse effect* on interstate commerce; and (iii) the requisite *nexus* between the challenged activities of defendants and the effect on the relevant channel of interstate commerce. *Cardio-Medical Assoc., Ltd. v. Crozer-Chester Med. Ctr.,* 552 F.Supp. 1170, 1176 (E.D.Pa.1982). The Tenth Circuit, in a somewhat different formulation, requires a plaintiff to "identify the relevant channels of interstate commerce and their relationship to the challenged activities." *Mishler v. St. Anthony's Hosp. Systems,* 694 F.2d 1225, 1227–28 (10th Cir.1981). *Mishler* also makes it clear that motions to dismiss are looked on with disfavor in such situations and should only be granted where a plaintiff can prove no set of facts to show the required effect upon interstate commerce. 694 F.2d at 1227.

As an initial step, Miami must "identify the element or elements of interstate commerce implicated in the case." 552 F.Supp. at 1176. The channels of interstate commerce which Miami identifies include: 1) commerce in interstate financing of real estate; and 2) commerce in the local residential real estate market arising out of the interstate movement of people. With this approach Miami seeks to come within the ambit of *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), and its progeny.

There is a sharp disagreement in the federal courts on whether the interstate movement of people is sufficient a stream of commerce for jurisdictional purposes. In the area of hospital privileges, the better view seems to be that "the travel of patients in interstate commerce is so remote

---

be passed for the preservation of public property, health, welfare, peace and safety, and is therefore an emergency ordinance.

**3.** I phrase the question this way because Miami does not seriously contend that it could meet

the in-commerce test for jurisdiction under the Sherman Act. See Plaintiff's Response to Motion to Dismiss at 5.

from and incidental to the provision of medical care that it will almost never be a relevant channel of interstate commerce in denial of hospital staff privileges cases." *Cardio-Medical,* 552 F.Supp. at 1189. This is not the view of the Tenth Circuit. It treats McLain as eliminating any doubt that "an interstate flow of people seeking a purely local service can have a substantial effect on interstate commerce." *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715, 726 n. 4 (10th Cir.1981) (en banc).

■ Permitting the interstate flow of people to be considered as a channel of interstate commerce in the real estate area is more defensible, in my view, than in the area of hospital privileges. Travel in interstate commerce is far more likely to result in the purchase of local real estate than in the use of local medical services. This is so whether the travel is one-way or for vacation. Out of state financing and interstate travel as channels in interstate commerce have been relied upon in a number of real estate related cases. *United States v. Foley,* 598 F.2d 1323, 1330–31 (4th Cir.1979); *Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 887–88 (3rd Cir. 1977); *Bartleys Town and Country Shops, Inc. v. Dillingham Corp.,* 530 F.Supp. 499 (D.Haw.1982); *Stauffer v. Town of Grand Lake, Colo.,* [1980–81] Trade Cas. (CCH) ¶ 64,029 (D.Colo.1980) (Arraj, J.). I therefore accept for the purpose of this motion the presence of interstate commerce.

■ Next I must determine if there is a nexus between the challenged activities of the defendants and interstate commerce, such that there is a substantial and adverse effect on interstate commerce. The parties do not agree on the proper standard of my review of the complaint and the facts in it. I do not think, however, that Miami must make a *particularized* showing of the nexus between the challenged activities and interstate commerce. Nor must Miami show that its activities directly induced the flow of interstate commerce. *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715 (10th Cir.1981) (en banc).

Miami primarily challenges the passing of the 1982 anti-soliciting ordinance, which made it impossible to do in-person solicitations in the Mt. Crested Butte base area. Additionally, Miami alleges that the defendants have:

> threaten[ed] to arrest and on one occasion in fact [did arrest] Plaintiff's agents for various alleged violations of Mt. Crested Butte ordinances;

> institut[ed] and fil[ed] repeated unfounded complaints with the Colorado Real Estate Commission regarding Plaintiff and its business;

> terminat[ed] prior agreements with Plaintiff and associated companies so as to deter Plaintiff from its lawful business activities; and

> harass[ed] Plaintiff's employees and agents and otherwise interfer[ed] with their right to carry out lawful business activity.

■ There is a logical nexus between the challenged activities and interstate commerce. If, as Miami claims, it is unable to solicit in any manner in the base area, if its agents are arrested and harassed for carrying out their employer's directions, Miami's access to the channels of interstate commerce will dry up. It will have no access to those out of state tourists who are interested in purchasing vacation property in Mt. Crested Butte. Concomitantly, Miami will no longer be able to facilitate out of state financing for its potential clients. The more difficult issue is the extent of the impact.

■■ A long line of cases has firmly established that the impact on interstate commerce must not be insubstantial. There can be no Sherman Act jurisdiction and the substantiality requirement is not met through allegations of effects on interstate commerce that are "incidental," "inconsequential," or "*de minimis.*" *McLain,* 444 U.S. at 246, 100 S.Ct. at 511. Miami's complaint makes these allegations. More difficult to decide is whether, if challenged as it is here, Miami must make a particularized showing by affidavit or oth-

erwise that there is a substantial effect on interstate commerce. However weak Miami's pleadings and affidavits are on this point,[4] *Mishler* seems to suggest that Miami need not make such a particularized showing.

> Although Dr. Mishler must eventually prove a not insubstantial effect on commerce, ... his complaint must merely identify the relevant channels of interstate commerce and their relationship to the challenged activities.

694 F.2d at 1227–28. Compare *Income Realty & Mtg., Inc. v. Denver Bd. of Realtors*, 578 F.2d 1326, 1329 (10th Cir.1978).

■ In the case before me there are virtually no facts alleged or shown by affidavit that the impact on interstate commerce is substantial. The broad language in *Mishler* does not require particularized pleading or proof at this juncture. Mindful of the *McLain* Court's admonition that a

> complaint should not be dismissed unless 'it appears that beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'

444 U.S. at 246, 100 S.Ct. at 511, quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), I deny the motion to dismiss.

4. Miami has submitted only one affidavit. In pertinent part it provides:
> Martin Marcuse, being first duly sworn upon oath, deposes and says:
> 1. I am an employee of Plaintiff, Miami International Realty Co., and am responsible for the marketing of the time share intervals of some of the condominium units of the Eagles Nest Townhouses located in Mt. Crested Butte, Colorado.
> 2. The underlying mortgages for the Eagles Nest Condominium units are held by Crawford Savings and Loan, located in Chicago, Illinois.
> 3. The time share intervals themselves are financed by Plaintiff, Miami International Realty Co., a Florida corporation with its principal place of business in Miami, Florida, which has designated the Fidelity National Mortgage Co. of St. Clair Shores, Michigan, as the company that collects the payments from the interval owners and pays the required amounts over to the Crawford Savings & Loan Company.

*Count IV*

■ Count IV alleges that the defendants and a variety of unnamed co-conspirators deprived Miami of equal protection and privileges and immunities under both the state and federal constitutions in violation of 42 U.S.C. § 1985(3). Several elements must be met to create such a cause of action.

> To come within the legislation, a complaint must allege that the defendants did (1) 'conspire or go in disguise on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'

*Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

■ Accepting for the moment the adequacy of Miami's pleadings, does its status as an "outside competitor" engage the protection of the statute? As many courts have noted, this is an issue whose exact

4. As of this date, Plaintiff has sold time share intervals to 79 individuals. Those individuals reside in the following states: Florida—22 sales; Missouri—6 sales; New York—6 sales; Pennsylvania—5 sales; Colorado—4 sales; Ohio—3 sales; Arizona—3 sales; Maryland—2 sales; Kansas—2 sales; Oklahoma—2 sales; Illinois—2 sales; New Mexico—2 sales; and 1 sale each in Massachusetts, Michigan, Iowa, North Carolina, Wisconsin, Oregon, Mississippi, New Jersey, Indiana, Vermont, Louisiana, and Georgia.
Defendants attacked the affidavit as untrue, claiming that Miami never financed any of the time share intervals, as Mr. Marcuse claimed. Miami now admits that it never financed any condominium units directly, but asserts that it did arrange for such interstate financing through the Crawford Savings and Loan Company of Chicago, Illinois.

contours were left undefined by the Supreme Court in *Griffin, supra,* 403 U.S. at 102 n. 9, 91 S.Ct. at 1798 n. 9. I have considered the scope of § 1985(3)'s coverage several times in the past. *See e.g., Rivas v. State Board for Community Colleges, Etc.,* 517 F.Supp. 467 (D.Colo.1981); *Runyan v. United Broth. of Carpenters and Joiners,* 554 F.Supp. 859 (D.Colo.1982). In *Sager v. City of Woodland Park* I said:

> It is not sufficient under § 1985(3) to allege individual discriminatory animus or even group animus unless the class discrimination can be deemed invidious. This requirement is the primary means that courts employ to ensure that § 1985(3) does not become a general federal tort law. The principle underlying this requirement is the recognition that some groups warrant special federal assistance in protecting their civil rights. Race, is of course, the quintessential invidious class. Other classes which courts have found sufficiently invidious for § 1985(3) purposes include: gender, national origin, political association and religious affiliation.

543 F.Supp. at 282, 291 (D.Colo.1982) (citations omitted). To make a classification of direct competitors or real estate brokers is to make a classification which is "more gormless than invidious." 543 F.Supp. at 292. The motion to dismiss is therefore granted.

### Count V

All defendants have moved to dismiss Miami's claim under 42 U.S.C. § 1983. CBMR claims that the complaint fails to state a claim against it for lack of any allegation that it was acting under color of state law or had any connection to one so acting. The town and individual defendants assert that the complaint is deficient because it fails to specify with particularity which defendants are responsible for which specific acts complained of. CBMR has also moved to dismiss claiming that it cannot, as a matter of law, be liable under § 1983 as a private corporation.

Count V must be dismissed as to all defendants for lack of specificity in pleading. It is of course not necessary for Miami to set out every specific act depriving it of its constitutional rights. The Rules of Civil Procedure require no such specificity. I recently addressed this issue in *Rivas, supra,* 517 F.Supp. 467, 474 (D.Colo.1981). There I said:

> Plaintiff has alleged the capacity in which each defendant acted. He has also alleged ... the manner in which defendants acted in violation of his civil rights. However, plaintiff has not alleged which defendants are responsible for the specific acts. Thus, more specificity is required.

As in *Rivas,* Miami's amended complaint specifies the capacity in which each defendant acted. ¶ 9–4, Amended Complaint. It also specifies the manner in which the defendants acted to violate its civil rights. It does not specify who did what. The motion to dismiss is accordingly granted with leave to amend within twenty days of the date of this order.

Let my ruling be understood. I am not concerned about the lack of connection between the private individuals and the public officials acting under color of state law. The complaint adequately posits a combination of public and private actors working to deprive Miami of its livelihood by passing the disputed no solicitation ordinance. *See Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Shaffer v. Cook,* 634 F.2d 1259 (10th Cir.1980).

I am concerned about Miami's ability to sustain a § 1983 action against a corporate defendant. Under the Civil Rights Statutes there can be no liability on the basis of *respondeat superior.* Liability requires personal involvement. Absent ratification by the corporation or wrong-doing by the corporation's high-ranking officers, § 1983 liability will not lie. Such facts have not been alleged here. Miami should consider this aspect of the case, should it choose to refile the § 1983 claim against Crested Butte Mountain Resorts.

## MOTION TO STRIKE

### Laches, Waiver and Good Faith

To the antitrust charge defendants raised the defenses of laches, waiver and good faith. Miami has moved to strike these defenses, claiming they cannot be raised here. I grant the motion as to laches and waiver but deny it as to the defense of good faith.

█ The Tenth Circuit has never addressed these specific issues. Numerous other courts, however, agree that laches and waiver "have no place in a federal antitrust action." *American Motor Inns, Inc. v. Holiday Inns, Inc.*, 365 F.Supp. 1073, 1098 (D.N.J.1973); *South-East Coal Company v. Consolidation Coal Company*, 434 F.2d 767, 784 (6th Cir.1970); And see *Semke v. Enid Automobile Dealers Association*, 456 F.2d 1361, 1369 (10th Cir. 1972).

I have considerable doubt that good faith is any sort of defense to an antitrust action brought under § 1 of the Sherman Act. See *Tire Sales Corp. v. Cities Service Oil Co.*, 410 F.Supp. 1222, 1229 (N.D.Ill.1976). The Fourth Circuit, in a factually dissimilar case, however, held that good faith may be a defense to a section 1 or section 2 action. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 691 F.2d 678, 690 (4th Cir.1982). Given the apparent uncertainty of the law in this area, I am not prepared to strike defendants' good faith defense without further discovery and argument.

### Counts IV and V

█ Against the civil rights claims defendants raised the defenses of laches, good faith and immunity under the Colorado Government Immunity Act, Colo.Rev. Stat. § 24–10–109 (1982). None of these defenses are available in this action.

█ In a civil rights action for both damages and equitable relief the statute of limitations controls the timeliness of the suit, not the doctrine of laches. *Mizell v. North Broward Hospital District*, 427 F.2d 468 (5th Cir.1970); *Baker v. F & F Investment*, 420 F.2d 1191 (7th Cir.1970);

*Needleman v. Bohlen*, 386 F.Supp. 741 (D.Mass.1974). Since there is no suggestion that this action was not brought within the applicable statute of limitations, I grant the motion to strike as to the defense of laches.

I also grant the motion with respect to the defense of good faith. That issue was conclusively decided in *Owens v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Defendants sought to preserve the laches and good faith defenses as to the claims under 42 U.S.C. § 1985. My dismissal of Count V, however, eliminates that problem.

The Colorado Government Immunity Act requires, as a condition precedent to suit, that a plaintiff give notice to the appropriate governing body or municipal entity. Section 24–10–109(3). There is no question that this was not done in the instant case. The Tenth Circuit has never addressed this issue. In fact, there appears to be but a single case on point, *Woods v. Homes and Structures of Pittsburg, Kansas, Inc.*, 489 F.Supp. 1270 (D.Kan.1980). In *Woods* plaintiff sought to enforce a federal securities claim. The City of Pittsburg raised the Kansas Notice of Claim Statute by way of defense. Judge O'Conner refused to dismiss the claim. I agree with his analysis of the problem. Like *Woods*, the instant case is not a diversity case, requiring application of state substantive law. Furthermore, to require notice of claim as a condition precedent of suit "would also unduly interfere with the federal action." 489 F.Supp. at 1295. The motion to strike is therefore granted as to the Colorado Government Immunity Act.

I am unwilling, on the record before me, to determine the defendant's immunity or exemption under *City of Lafayette, Louisiana v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) and *Community Communications Co. v. City of Boulder, Colorado*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), and related cases. The Tenth Circuit defines the relevant issues thusly:

[T]he Supreme Court made it clear that a municipality is not exempt from the antitrust laws unless it constitutes the action of the state itself or was a municipal action in furtherance or implementation of state policy by means of a 'clear articulation and affirmative expression' contemplating a municipality's anticompetitive program.

*Pueblo Aircraft Service, Inc. v. City of Pueblo,* 679 F.2d 805, 808 (10th Cir.1982). I am not able to decide this issue on a motion to strike. As I said in *Hackworth v. Amoco Oil Company,* 537 F.Supp. 1021 (D.Colo.1982);

I cannot determine whether any particular conduct of the defendants is entitled to specific immunity without considering detailed facts that are not presently before me.

The motion to strike this defense is therefore denied without prejudice to renew.

## MOTION FOR SUMMARY JUDGMENT

The final motion before me is Miami's for partial summary judgment. Miami would have me declare that the 1983 anti-soliciting ordinance is unconstitutional as either overbroad or vague. Defendants say such a determination is premature.

I decline to address the issue at this time. It is not the business of the federal courts to issue advisory opinions. The constitutionality *vel non* of an ordinance now-repealed can only be relevant if intent, conspiracy or some other factually ascertainable matter is presented. Miami asserts that "at some point prior to trial this Court, not a jury, will be called upon to determine the facial validity of this ordinance." Reply Brief at 2. Such may be the case. On the record before me, however, I cannot begin the four part analysis the Supreme Court has adopted for judging limitations on commercial speech. *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980); *Bolger v. Youngs Drug Products Corp.,* —— U.S. ——, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

As CBMR points out, there has not been an adequate showing "as to what conduct, if any, was outlawed by the anti-solicitation ordinance." Nor am I convinced that plaintiff's activities, claimed as a matter of First Amendment right, were entirely legal and free from misleading content. The motion is therefore denied without prejudice to renew.

IT IS HEREBY ORDERED that the motion to dismiss is granted in part and denied in part, the motion to strike is granted in part and denied in part, and the motion for summary judgment is denied.