MIAMI INTERNATIONAL REALTY COMPANY, Plaintiff,

v.

TOWN OF MT. CRESTED BUTTE, COLORADO; Crested Butte Mountain Resort, Inc.; James Dean, Richard Paynter, Robert Pino; Tim Currin; and Ptarmigan Associates, Inc., Defendants.

Civ. A. No. 83–K–25.

United States District Court,
D. Colorado,
Civil Division.

April 12, 1985.

B. Lawrence Theis, William E. Walters, III, Walters & Theis, Denver, Colo., for plaintiff.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

On February 14, 1983, plaintiff amended its original complaint to include claims for monetary and injunctive relief for violation of federal antitrust laws. The complaint alleges that defendants conspired to prohibit plaintiff from engaging in the business of selling condominium time shares. Plaintiff's factual allegations are more fully detailed in my earlier orders of January 23, 1984 (579 F.Supp. 68) and July 11, 1984. A pre-trial conference was held before United States Magistrate Schauer on June 24, 1984 and trial to a jury is set commencing February 26, 1986. With the exception of discovery relating to time-sharing and damages experts all preparatory matters have been completed and the case is ready for trial. Defendants now move to dismiss all antitrust damage claims and to strike plaintiff's damage expert.

In response to the Supreme Court's opinion in *Community Communications Co., Inc. v. City of Boulder, Colorado,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), Congress enacted the Local Government Antitrust Act of 1984 exempting local government entities from damage remedies under section 4, 4A or 4C of the Clayton Act. P.L. 98–544, October 24, 1984, effective September 24, 1984. As the Senate Judiciary Committee noted, before *City of Boulder* "it was generally assumed" that the state action antitrust immunity doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) applied to both states and their local units of government. Report of the Senate Committee on the Judiciary on the Local Government Antitrust Act, S.Rep. No. 593, 98th Cong., 2d Sess. 1 (1984). *City of Boulder,* however, provided that for the actions of local government to be subject to state action immunity those actions must be in furtherance of clearly and expressly mandated state policy. 455 U.S. at 51, 102 S.Ct. at 840. The Senate Committee concluded that:

in many instances, the practical impact of *Boulder* and [its predecessor] *Lafayette* [*v. Louisiana Power & Light Co.,* 532 F.2d 431 (1976) ] has been to paralyze the decision-making function of local government. The threat of antitrust treble

damage actions has caused local officials to avoid decisions that may touch on the antitrust laws even when such decisions have involved critical public services. Report of the Senate Committee on the Judiciary, *supra* at 3. Moreover, the Senate Committee concluded that "regardless of whether a local government has violated the antitrust laws, it is inappropriate to assess damages which ultimately must be borne by the taxpayers." *Id.* at 6–7.

In response to these concerns Section 3(a) of the Local Government Antitrust Act provides specific exemption for any "local government, or official or employee thereof acting in an official capacity." Section 4(a) provides exemption from any "claim against any person based on any official action directed by a local government, or official or employee thereof acting in an official capacity." Evaluation of the applicability of the Act is a matter of first impression in this district and the Tenth Circuit.

 Normally, an act is effective from its date of passage and applies to all litigation pending on that date. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711–16, 94 S.Ct. 2006, 2016–18, 40 L.Ed.2d 476 (1974).[1] However, section 4(b) provides that subsection 4(a) "shall not apply with respect to cases commenced before the effective date of the Act [September 24, 1984]". The exemption provided local government entities themselves is a bit more expansive. Section 3(b) provides:

Subsection (a) shall not apply to cases commenced before the effective date of this Act unless the defendant establishes and the court determines, in light of all the circumstances, including the stage of litigation and the availability of alternative relief under the Clayton Act, that it

would be inequitable not to apply this subsection to a pending case. In consideration of this section, existence of a jury verdict, district court judgment, or any stage of litigation subsequent thereto, shall be deemed to be prima facie evidence that subsection (a) shall not apply.

Although the complaint was amended to include antitrust claims more than 19 months before the effective date of the Act, defendants Crested Butte Mountain Resort (CBMR), Town of Mt. Crested Butte and James Dean, Richard Paynter and Robert Pino, all town officials, seek exemption from damage remedies pursuant to section 3(a). Plaintiff responds first, that CBMR is not a local government entity. Thus, any exemption afforded Crested Butte Mountain Resort would arise under section 4 rather than section 3. As such, no retroactive exemption would apply to CBMR. Plaintiff argues second, that the facts in this case compel a finding that the section 3(a) exemption should not be retroactively applied to claims raised before the effective date of the Act.

*Damage Immunity of CBMR*

 Crested Butte Mountain Resort argues that it is a local government, or official or employee thereof subject to the damage exemptions of section 3(a). On face examination, CBMR is no more than a private entity. CBMR tries to fit under the provisions of section 3(a) by arguing that most of the allegations against it relate to the actions of its employees, Larkin and McDaniel, while they were serving as members of the Crested Butte town council. Thus, CBMR argues that it must fall under the ambit of section 3(a) because its agents were acting in an official capacity. Plaintiff draws an apt analogy by suggesting

---

1. Plaintiff suggests that application of the Local Government Antitrust Act to this case may be constitutionally infirm as retroactive legislation. Analysis of the constitutionality of the retroactive application of a statute begins with the proposition "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Bradley v. School Bd. of*

*City of Richmond,* 416 U.S. at 711, 94 S.Ct. at 2016. The thrust of the analysis in this opinion is that it would be inequitable and hence unjust not to apply the Local Government Antitrust Act's immunities in this case. Moreover, the mandate that such actions be applied to pending cases is clearly laid out in the text of the Act. *See also Jefferson Disposal Co. v. Parrish of Jefferson, Louisiana,* 1985–1 Trade Cas. (CCH), ¶ 66,471 at 65, 362–4 (E.D.La. March 5, 1985).

that CBMR's attempt to fit under section 3(a) is akin to trying to hide an elephant in the courtroom. Independent of any of the actions taken by Larkin or McDaniel while serving on the town council, plaintiff alleges numerous actions taken by CBMR in an attempt to drive plaintiff out of business. These allegations include: engaging in formal and informal discussions with town representatives to prepare plans to curtail plaintiff's business, obtaining favorable treatment from the town in the passage and enforcement of ordinances intentionally directed at plaintiff's business, cancelling a pre-purchase lift ticket contract with an affiliate of plaintiff, and effecting the arrest and prosecution of plaintiff's representatives. Moreover, a private individual or entity cannot become a public entity by virtue of engaging in a conspiracy with the public entity. · It is beyond cavil that CBMR can be liable for conspiring with a town official in violation of antitrust laws without assuming the cloak of the damage exemption of a governmental entity.

Antitrust immunity might extend to a private entity engaging in anticompetitive activity with a state agency which is immune under the *Parker* doctrine. *See* I P. Areeda & D. Turner, Antitrust Law ¶ 212b (1978). The Local Government Antitrust Act of 1984 extends such immunity to private entities acting under the direction of a local government. The Act, however, draws a clear distinction between the local government entity subject to the provisions of section 3 and the private entity subject to the provisions of section 4. Arguably, CBMR could be exempt from damage remedies by virtue of the provisions of section 4(a) which precludes damage claims "against a person based on any official action directed by a local government or official or employee thereof acting in an official capacity." However, section 4(b) specifically precludes the application of section 4(a) exemptions in cases such as this one which were commenced before the effective date of the Act.

*Application of Local Government Immunities to a Pending Case*

■ The other movants, Town of Mt. Crested Butte, Dean, Paynter and Pino, all fall within the ambit of the exemptions in section 3(a). Section 3(b) leaves the determination of retroactive application of the exemption in section 3(a) to the sound discretion of the trial court. The Act directs that the court consider "all the circumstances" in determining whether damage exemptions are appropriately applied in pending cases. Only two factors, however, are specifically enumerated in the text of the statute and the conference committee report. Local Government Antitrust Act of · 1984, Conference Report, H.R.Rep. No. 1158, 98th Cong., 2d Sess. 3–4 (1984) U.S. Code Cong. & Admin.News 1984, 4602, 4626–4627. The specific reference to the stage of the litigation and the availability of other relief under the Clayton Act indicates that these factors are paramount. The explicit language of the statute, however, provides that these two factors are not exclusive. *See also* 130 Cong.Rec. H12176, H12186–7 (daily ed. October 11, 1984).[2]

---

**2.** The colloquies between Congressmen Crane and Hyde and Congressmen Seiberling and Rodino provide guidance as to factors which should be considered in determining the applicability of section 3(a) exemptions. 130 Cong. Rec. at 12186–7. Congressmen Hyde, Seiberling and Rodino were all floor managers for the Local Government Antitrust Act. Their statements during the course of debate are particularly useful in gauging legislative intent. *See, e.g., Johansen v. United States,* 343 U.S. 427, 437, 72 S.Ct. 849, 855, 96 L.Ed. 1051 (1952).

In the Senate, however, another of the floor managers was more adamant as to the import of the enumerated factors of stage of litigation and availability of alternative relief. Senator Metzenbaum stated:

I want to make one thing crystal clear for the record about a central aspect of this conference report.

We found ourselves hung up on the whole question of what happens to pending cases.

A number of Senators felt quite strongly that a plaintiff who has won a jury verdict should not have that verdict taken away by intervening legislation—others disagreed.

The Senate language which was accepted by the conferees, reflects hardfought, difficult negotiations among Senators.

The statutory language and legislative history also provide that the stage of the litigation is the most significant factor. If litigation filed before the effective date of the act has advanced to a jury verdict or district court judgment, "a local government defendant would need compelling equities on its side to justify the application of [section 3(a)] to the pending case." H.R.Rep. No. 1158 at 3–4, U.S.Code Cong. & Admin.News 1984, at 4627. Conversely, the Act's exemptions should be applied if a case is filed shortly after September 24, 1984. As the colloquy between two floor managers, Congressmen Seiberling and Rodino, indicates "the fact that pretrial discovery has not been completed in a pending case may support a determination that section 3 is applicable." 130 Cong.Rec. at 12187. Thus, one district court applied section 3(a) exemptions in a case filed only 17 days before the effective date of the Act. *Cablevision, Inc. v. City of Jefferson, Missouri,* 604 F.Supp. 845 (W.D.Mo.1984).

■ This case is certainly more difficult as the facts fall somewhere in between the extremes of nascence and senescence. In *Jefferson Disposal Co. v. Parrish of Jefferson, Louisiana,* 1985–1 Trade Cas. (CCH), ¶ 66,471 (E.D.La. March 5, 1985), the district court applied the Act's damage exemptions to a case filed in November 1983, in which considerable discovery remained. The antitrust claims here were first raised in an amended complaint filed February 14, 1983. Formal discovery was completed on May 31, 1984, but discovery on a limited basis continues because of delay by plaintiff. *See* my order in this case of December 17, 1984 and the discussion of defendants' motion to strike below. Trial is scheduled for February 26, 1986. Although trial is ten months away, this time gap is not solely attributable to the actions of the parties. While I realize that crowded court dockets can have an affect on litigation, delay in obtaining a trial date occasioned by this court's case load is a factor beyond the litigants' control. Such delay is not an indicia of how far toward resolution this case has moved. It should not be a factor in applying section 3 exemptions. Nevertheless, discovery has been reopened and a trial set for today would have to be delayed. Thus, while this case is in a relatively advanced stage, it is not so far along as to compel that section 3 not be applied. I must turn to other circumstances to determine if it would be equitable to apply section 3(a) exemptions.

■ Defendants argue that relief other than damages under the Clayton Act is readily available to plaintiff, thus compelling application of the exemptions. In addition to the declaratory remedies sought by plaintiff in the complaint, defendants point to the alternative relief of the antitrust damages which could be obtained from private defendants and damages which could

At the conference, the House suggested that additional factors, such as the financial impact on a city, be included. These suggestions were rejected by the Senate conferees.

I want to say as loudly and as clearly as it is possible to say, as one of those who was intimately involved in these negotiations, that this Senator cannot change what the conferees agreed upon. No other Senator can change what the conferees agreed upon. No statement made upon the House floor can change what the conferees agreed upon. House Members who came to the conference and who made certain proposals and who were rejected in connection with those proposals have now spoken on the floor of the House, attempting to add some new interpretation.

None of those House Members and none of us here in the Senate have the authority, have the strength, have the legal right to change the legal effect of what the conferees concluded in their language, nor can we change the statement of the managers. Only the statement of the managers accurately reflects the congressional intent in this area, and there is no way of changing that.

130 Cong.Rec. S14368 (daily ed. October 11, 1984) (statement of Sen. Metzenbaum). Contrary to plaintiff's suggestion, Senator Metzenbaum's remarks do not eradicate the plain language of the statute directing that all circumstances be considered and enumerating some, but not all, of the relevant factors. The Senator's statement does, however, help to emphasize the relative importance of the specifically delineated factors.

be obtained pursuant to the alleged violations of 42 U.S.C. § 1983. Section 3(b), however, restricts relevant alternative relief to remedies under the Clayton Act. The legislative history clearly indicates that Congress contemplated that relevant alternative remedies would consist solely of Clayton Act injunctive relief against the municipal defendant, rather than damage relief from other private defendants. The conference report provides, "where injunctive relief is unavailable or incomplete, the burden [faced by the municipality seeking application of section 3 exemptions] would become more difficult." H.R.Rep. No. 1158 at 3, U.S.Code Cong. & Admin.News 1984, at 4627. Similarly the Seiberling/Rodino colloquy concludes that:

> [I]n looking to the availability of alternative relief under the Clayton Act—another factor expressly mentioned in the bill—the court could determine whether an injunction would be sufficient to halt continuing injury caused by an ongoing antitrust violation....

130 Cong.Rec. at H12187.

■ While I am mindful that damage exemptions applied to the town would not foreclose plaintiff's ability to obtain monetary relief from private defendants, the potential damage liability of other defendants should not enter into the calculus used in determining whether to apply section 3 exemptions to pending cases. The legislative history looks only to alternative remedies available against the local government defendant. Moreover, the liability of each defendant under the Clayton Act is joint and several. *See In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257 (7th Cir.1980). Thus, liability of one defendant can not be used to offset the liability of another.

■ Clearly, injunctive relief alone would not make plaintiff whole. Nevertheless, broad remedies can be fashioned to cure many of the alleged excesses of the town. District courts are granted broad authority to fashion prospective remedies "both to avoid a reoccurrence of the violation and to eliminate its consequences." *National Society of Professional Engineers v. United States*, 435 U.S. 679, 697, 98 S.Ct. 1355, 1368, 55 L.Ed.2d 637 (1978). In particular, the town could be enjoined from engaging in various practices and enforcing the various ordinances underlying plaintiff's claims. Thus, the availability of injunctive relief supports the application of section 3 of the Local Government Antitrust Act to this case.

■ The other circumstances, delineated in the legislative history, which are relevant to determining the applicability of section 3 exemptions to pending cases include: 1) whether considerable financial harm to the local unit of government would result from a damage award; 2) the degree to which the local government's action was directed by or predicated on federal law; and 3) whether the defendant acted in good faith while exercising its normal legislative, regulatory, executive administrative or judicial powers. 130 Cong.Rec. at 12186 (Colloquy between Representatives Crane and Hyde).

With regard to the first factor, the Town of Mt. Crested Butte properly notes that the maximum potential damage award would be devastating to its budget.[3] With less than 350 year round residents and 1,500 property owners the town is not well equipped to incur liability for a significant damage remedy. Plaintiff's damage prayer when trebled could amount to as much as $9,000,000. At the present rate of post judgment interest of 10.08% per annum, the annual interest payments alone would exceed the town's 1983 expenditures of $717,419. The town argues that any damage award would significantly hamper its ability to provide basic services. The bulk of its budget now, other than for the defense of this lawsuit, is used to maintain the vital services of the community such as police, fire, maintenance and administra-

---

**3.** Certainly, the liability of the Town of Mt. Crested Butte could be offset by contribution from other conspirators. But as noted earlier, each defendant is severally liable for any damage award under the Clayton Act.

tion. It is this type of extreme and catastrophic economic impact that Congress intended to eliminate. In this particular case, the economic impact is severe because the alleged damage amount is great and the entity charged with paying it is small. This factor thereby supports the town's position that the damage relief of section 3 be applied.

 Defendants' actions clearly were not directed by or predicated on any federal law. Plaintiff views the evidence as reflecting repeated denials of licenses for frivolous reasons, prosecution of sales people acting as on-site solicitors for plaintiff's project, threats of prosecution and withholding of benefits, the conduct of a town council meeting at which a multifaceted plan to halt plaintiff's business was discussed and agreed upon, repeated complaints to the state real estate commission by real estate brokers in conjunction with city officials and the passage of at least three ordinances specifically directed at plaintiff's business. Such actions may reflect violations of plaintiff's rights which are properly restrained under the Clayton Act. Each of the town's actions, however, was undertaken pursuant to its authority as a home rule city. *See* Colo. Const., art. XX, sec. 6. The state's mandate is not sufficiently specific to support immunity under the *Parker* state action doctrine. *See Community Communications v. City of Boulder*, supra. Nevertheless, each action taken by the town reflects a legitimate exercise of the police powers it possesses under the laws of the State of Colorado. This factor also weighs in favor of applying section 3 immunity.

Accordingly, I find that in consideration of all relevant circumstances the damage exemptions of the Local Government Antitrust Act of 1984 should be applied in this case.

*Motion to Strike*

Plaintiff amended its complaint to raise antitrust damage claims on February 14, 1983. On January 16, 1984 plaintiff's present counsel, Walters & Theis, entered its appearance, replacing plaintiff's original counsel, Hill & Robbins. Not until April of 1984 did plaintiff begin discussions with the accounting firm of Laventhol & Horwath to perform an analysis concerning the damage issues in this case. On June 1, 1984 plaintiff entered into an agreement to retain Laventhol as plaintiff's damage expert.

The pre-trial order, dated June 22, 1984, provided that all expert witnesses must have been designated within sixty days. The pre-trial order also provided that following endorsement of an expert witness, written summaries of opinions of expert witnesses and a description of the expert's qualifications must be provided to opposing counsel within 30 days. By an order dated July 26, 1984, plaintiff was granted until August 6, 1984, in which to provide a summary of Laventhol's opinion. On August 6, counsel for plaintiff produced to defendants a resume of Laventhol and a letter from an individual in the firm stating, in general terms, what the firm had done to date and its preliminary findings. This information did not include a detailed summary of the opinion. On October 19, 1984, Magistrate Schauer approved yet another stipulated extension of time granting plaintiff until September 15, 1984, to produce a report of Laventhol's opinion. The order provided that all endorsement and cross-endorsement of experts was to be completed by October 15, 1984. This new time frame included 30 days from the receipt of Laventhol's damage report for defendants to endorse damage experts of their own. On December 31, 1984 plaintiff informed defendant that the report from the damage expert was not yet complete but was forthcoming.

Despite the allowance of several extensions of time, plaintiff has failed to comply with the orders relating to certification of damage expert witnesses. Plaintiff suggests that the delay in preparing the damage expert's report derived from the uncertainty concerning the certification of plaintiff's time-share expert. Apparently, the damage expert relies on the opinions of the time-share expert. On October 22, 1984

Magistrate Schauer held that the endorsement of plaintiff's time-share expert should be stricken. On December 17, 1984, I reinstated the endorsement of the time-share expert, but charged plaintiffs with costs relating to the motion and costs relating to any deposition of the expert.

 Plaintiff's delay concerning its damage expert may be explainable but it cannot be justified or approved. No motions have been filed seeking a stay of matters relating to the damage expert because of an interrelationship with the opinions of the time-share expert. This court can not be expected to read the minds of the parties and their experts when trying to control scheduling matters. Earlier in this order I noted that litigants had been disadvantaged by a docketing backlog. If that backlog is to be controlled, let alone eliminated, parties must comply with scheduling orders. Sanctions need be imposed if orders are to have any import.

The striking of plaintiff's damage expert may be too severe a remedy. As noted in my order of December 17, 1984, the courts of appeals have suggested that exclusion of a witness is an extreme sanction. *See Murphy v. Magnolia Electric Power Ass'n,* 639 F.2d 232, 235 (5th Cir. 1981); *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1201–02 (3d Cir. 1978); *Eisbach v. Jo-Carroll Electric Cooperative, Inc.,* 440 F.2d 1171, 1173 (7th Cir.1971). Among the factors which I should consider in deciding whether to exclude the testimony of plaintiff's damage expert are "the explanation, if any for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance." 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2050 at 327 (1970). Plaintiff has not adequately justified its non-compliance with scheduling orders. However, the testimony of a damage expert may be central to plaintiff's case. Trial is scheduled sufficiently in advance of the date of this order that defendants are not prejudiced by plaintiff's tardiness concerning the en-dorsement of Laventhol. Discovery can still be conducted concerning Laventhol's opinions without delaying trial.

Nevertheless, as noted in my earlier order, if this court is to be able to handle its case load it must be able to manage discovery in an orderly and efficient manner. If parties can freely abuse the court's attempts to organize and control litigation, then there is no sense in having rules. Discovery concerning plaintiff's damage expert is reopened upon the following conditions, similar to those imposed concerning plaintiff's time-share expert: 1) if not already provided, Laventhal's report shall be provided to defendants within ten (10) days of the date of this order; 2) the matter is referred to Magistrate Schauer to supervise additional discovery; 3) plaintiff shall provide its damage expert for deposition by defendants at plaintiff's expense; and 4) plaintiff shall pay defendants' attorney fees in the taking of the damage expert's deposition. Payment shall be made within ten days of receipt of billing.

Accordingly it is ORDERED that defendant Crested Butte Mountain Resort's motion to dismiss is denied. The motion to dismiss damage claims against defendants Town of Mt. Crested Butte, Dean, Paynter and Pino is granted. It is further ORDERED that defendants' motion to strike is denied in part and granted in part as detailed herein.