**PONTARELLI LIMOUSINE, INC., et al., etc., Plaintiffs,**

v.

**The CITY OF CHICAGO, a municipal corporation, et al., Defendants.**

No. 83 C 6716.

United States District Court,
N.D. Illinois, E.D.

Oct. 29, 1985.

Charles Pressman, Morris G. Dyner, Dan Brusslan, Fischel & Kahn, Chicago, Ill., for plaintiffs.

Jeremiah Marsh, William J. McKenna, Christopher W. Zibart, Hopkins & Sutter, Chicago, Ill., for defendants; Bob Fioretti, Chicago, of counsel.

## Memorandum

LEIGHTON, District Judge.

This is a motion by defendants, City of Chicago ("City"), and Thomas Kapsalis, Commissioner of Aviation of the City of Chicago, to strike plaintiffs' claim for antitrust damages. The complaint alleges that City and certain unlicensed suburban liveries ("Suburban")[1] conspired to foreclose plaintiffs from the market of walk-up passengers at O'Hare Airport by establishing rent-free booths for the exclusive use of Suburban to solicit customers. In Count III,[2] plaintiffs allege violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, the only claims relevant to this motion.

Subsequent to the filing of the complaint in this case, Congress enacted the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34–36 ("the Act") which provides that no damages may be recovered from any local government under § 4 of the Clayton Act, 15 U.S.C. § 15, the provision on which plaintiffs rest their claim for damages. However, the Act does not preclude a damage claim against a city in cases filed prior to its effective date, September 24, 1984, "unless the defendant establishes, and the court determines, in light of all the circumstances, including the stage of litigation and the availability of alternative relief under the Clayton Act, that it would be inequitable not to apply this subsection to a pending case." 15 U.S.C. § 35(b).

The issue before the court is whether it would be inequitable not to apply the Act to the claim for damages alleged in Count III. In urging application of the Act, City makes four arguments: First, alternative relief is available to plaintiffs under the Clayton Act in that they will still have full recourse against private defendants. Second, City did not reap any benefit from the alleged anticompetitive conduct because it provided the booths rent free; thus, profits allegedly lost by plaintiffs accrued to Suburban and not to City. Third, plaintiffs' claim for injunctive relief will remain undiminished. Finally, the case is in the early stages of litigation; the class has not yet been certified and discovery to date has been minimal.

Plaintiffs respond with the argument that the only alternative remedy to be considered under the Act is injunctive relief; the possibility of obtaining damages from private defendants should not exculpate City. They claim that even injunctive relief in this case will be an incomplete remedy because many plaintiffs have already been forced out of business. They argue further that the fact City did not charge a rental fee for the booths is irrelevant because City profitted from its conduct in other ways. Plaintiffs insist that the litigation is at an advanced stage; the court has ruled on motions to dismiss; and the class certification issue is nearly fully briefed. This suit was filed thirteen months prior to the effective date of the Act; plaintiffs claim they have relied on the availability of an adequate remedy at law. Finally, plaintiffs argue that the other circumstances to be weighed do not favor defendants' position. They point out that no unusual financial harm will result because City has a

---

1. Defendants include both licensed and unlicensed livery services and two trade associations operated for their benefit. These defendants are referred to collectively in the complaint as "Suburban Liveries" as they operate out of Chicago suburbs. Plaintiffs are licensed liveries operating out of Chicago.

2. Count I is brought under 42 U.S.C. § 1983 and alleges that City permitted Suburban Liveries to solicit passengers at O'Hare and denied Chicago Liveries this right. Count II alleges Suburban Liveries, through their trade associations, conspired with City to confer a monopoly on Suburban Liveries.

substantial budget; and further, it acted in bad faith.

Determining whether the Act should be applied to a pending case must be made on a case-to-case basis, with the burden of proof on the local government defendant to show that it would be inequitable not to apply the statute. *See Woolen v. Surtran Taxicabs Inc.*, 615 F.Supp. 344, 351 (N.D. Tex.1985). The statute lists two factors to be considered in this analysis: the stage of the litigation and the availability of alternative relief under the Clayton Act. 15 U.S.C. § 35(b). Some courts have suggested consideration of three additional factors noted in the legislative debates: (1) the financial harm that a treble damage award can inflict on a municipality and its taxpayers; (2) whether the municipal action was predicated on or in furtherance of state or federal laws; and (3) whether the municipality acted in good faith in the discharge of its normal legislative, regulatory, executive, administrative, or judicial authority. *See Woolen*, 615 F.Supp. at 351; *Miami Int'l Realty Co. v. Town of Mount Crested Butte*, 607 F.Supp. 448, 454 (D.Colo.1985).

As to the first statutory factor, the stage of the litigation, a crucial factor militating in favor of applying the Act to pending cases is the failure to complete pretrial discovery prior to the statute's effective date. *See e.g., Woolen*, 615 F.Supp. at 352, *Miami Int'l Realty*, 607 F.Supp. at 452 citing 130 Cong.Rec. H12187 (daily ed. Oct. 11, 1984). Thus, where discovery is continuing, courts have almost universally applied the Act to cases pending prior to its effective date. *See Woolen*, 615 F.Supp. at 352; *S. Kane & Son Inc. v. W.S. Grace & Son*, 623 F.Supp. 162, 163 (E.D.Pa. 1985); *Miami Int'l Realty*, 607 F.Supp. at 453; *Jefferson Disposal Co., Inc. v. Parish of Jefferson, La.*, 603 F.Supp. 1125, 1132–33 (E.D.La.1985); *Trustees of A.J. Bremen Realty Trust v. City of Boston*, 1985–1 Trade Cas. (CCH) ¶ 66,520 (D.Mass.1985); *TCI Cablevision Inc. v. City of Jefferson, Mo.*, 604 F.Supp. 845, 1985–1 Trade Cas. (CCH) ¶ 66,335 (W.D.Mo.1984). *Cf. Huron Valley Hosp. Inc. v. City of Pontiac*, 612 F.Supp. 654, 664–65 (E.D.Mich.1985) (court refused to apply Act to 1978 case where district court had previously entered judgment, although judgment was later vacated and discovery was still ongoing).

Here, the case was filed thirteen months prior to the effective date of the Act. Although the docket discloses no discovery activity in the past year, a discovery cutoff date has not been set. This court has ruled on defendants' motions to dismiss but has not ruled on the class certification issue; indeed, this issue has not been fully briefed. Considering all of these factors, the court concludes that this case has not yet progressed to such an advanced stage so as to preclude application of the Act.

As to the second statutory factor, the availability of alternative relief, some courts have limited this consideration to whether injunctive relief will halt any continuing injury, and have refused to weigh the possibility of damage relief from other private defendants. *See Miami Int'l Realty*, 607 F.Supp. at 454, *Jefferson Disposal*, 603 F.Supp. at 1133 n. 19. Other courts have looked to whether plaintiff can recover damages from other private defendants, or obtain injunctive relief. *See Woolen*, 615 F.Supp. at 352; *S. Kane & Son*, 623 F.Supp. at 163; *TCI Cablevision*, 604 F.Supp. 845, 1985–1 Trade Cas., ¶ 66,335. Both criteria are met here. There are several private defendants which can be held liable for money damages. Further, plaintiffs can halt any continuing injury by seeking appropriate injunctive relief. The availability of alternative relief therefore weighs in favor of the applying of the Act to this case.

As to the three non-statutory factors, the court finds them of little use to its analysis at this stage of the litigation. Unless the municipality is clearly engaging in actions directed by or predicated on state or federal law, a determination whether City acted in good faith cannot be made in review of the pleadings on a motion to strike.

As to whether the resulting financial harm to City will be considerable, this ques-

tion will nearly always be answered in the affirmative. The claimed treble damages in this case amount to $30 million in potential liability. This court doubts that the resulting financial harm to a municipality from treble damage liability would ever be insignificant, even though it may not necessarily result in municipal bankruptcy. *Cf. Woolen,* 615 F.Supp. at 353. The court therefore confines its analysis to the factors enumerated in the statute.

In summary, in considering the statutory factors of the stage of the litigation and the availability of alternative relief under the Clayton Act, the court concludes that it would be inequitable not to apply the Act in this case. Accordingly, defendants' motion to strike plaintiffs' claim for antitrust damages against City is granted.

So ordered.