Jerry KING, Gail King, Curt Rogers, Aimee King–Rogers, David McGuire and Jennifer McGuire, Plaintiffs,

v.

UNITED STATES of America; Community Involved Chartered School; Jefferson County School District R–1; Wayne Emmett McKillop; Nathan Soares; Eli Messer; Loney Martinez; Troy Glandon; Dustin Lacey; Jane Roe 1; Jane Roe 2; and Jane Roe 3, Defendants.

Scottsdale Insurance Co., as Subrogee of Linda Farris, Plaintiffs in Intervention,

v.

Wayne Emmett McKillop; Nathan Soares; Eli Messer; Loney Martinez; Troy Glandon; Dustin Lacey, by and through their respective parents and/or guardians, Defendants.

Colorado Casualty Insurance Company, as Subrogee of Barbara McCabe; and Barbara McCabe, Plaintiffs in Intervention,

v.

Community Involved Chartered School; Jefferson County School District R–1; Wayne Emmett McKillop; Nathan Soares; Eli Messer; Loney Martinez; Troy Glandon; Dustin Lacey; Jane Roe 1; Jane Roe 2; and Jane Roe 3, Defendants.

No. 97–B–341.

United States District Court, D. Colorado.

May 28, 1999.

Eugene Deikman, Eugene Deikman, P.C., Denver, CO, James R. Florey, Jr., Englewood, CO, Scott A. McGath, William D. Thode, Van Voorhis, McGath & Overturf, P.C., Denver, CO, for plaintiffs.

William J. Kowalski, Colleen A. O'Laughlin, Caplan and Earnest, LLC, Boulder, CO, David J. Nowak, White and Steele, P.C., Denver, CO, Bradley D. Tucker, Walberg & Dagner, P.C., Quebec Centre II, Englewood, CO, Jamey W. Jamison, Harris, Karstaedt, Jamison & Powers, P.C., Englewood, CO, Marc R. Levy, Martha C. Ferris, Stuart D. Morse, Levy & Lambdin, P.C., Englewood, CO, Franklin D. Patterson, Craig S. Nuss, Patterson & Nuss, P.C., Englewood, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Pending are Fed.R.Civ.P. 12(b)(1) and (6) motions to dismiss filed by defendants United States of America (United States), Community Involved Chartered School

(CICS), Jefferson County School District R–1 (School District), and Wayne Emmett McKillop (Mr. McKillop). After consideration of the motions, responses, and counsels' argument, I will deny the motions in part and grant them in part.

## I.

### Facts

The following facts are undisputed unless otherwise stated. This case arises out of a forest fire that began on May 18, 1996 in the Pike National Forest near Buffalo Creek in Jefferson County, Colorado. Third Amended Complaint, ¶ 9. The fire destroyed the property, buildings, and dwellings owned and occupied by Plaintiffs Jerry King, Gail King, Curt Rogers, Aimee King–Rogers, David McGuire, and Jennifer McGuire (individual Plaintiffs). Plaintiffs allege that the forest fire started as a result of a campfire built by defendants Soares, Messer, Martinez, Glandon, and Lacey, *id.* at ¶ 11, students at CICS, a charter school in the School District. Mr. McKillop, a teacher and student advisor at CICS, took sixteen CICS students on a three day camping trip in the Pike National Forest to a site used by he and his wife pursuant to a twenty year "Term Special Use Permit" (Permit) issued by the United States Forest Service. Some of the students stayed in a cabin located on the land while others pitched tents near the cabin and at a site some distance from the cabin. At the more distant campsite, several students built a fire pit for campfires. An ember from one of the campfires apparently started the forest fire.

The following claims are pending:

| Plaintiff | Claim Number | Defendant | Claim |
|---|---|---|---|
| Jerry King, Gail King, Curt Rogers, Aimee King-Rogers, David McGuire, and Jennifer McGuire | One | United States | Negligence |
| | Two | McKillop | Negligence |
| | Three | McKillop | Statutory Liability for violation of §§ 13-21-105 and 18-13-109, C.R.S. |
| | Four | McKillop, Soares, Messer, Martinez, Glandon, and Lacey | Negligent infliction of emotional distress |
| | Five | CICS | *Respondeat superior* for acts and omissions of McKillop |
| | Six | School District | *Respondeat superior* for acts and omissions of CICS and McKillop |
| | Seven | Soares, Messer, Martinez, Glandon, and Lacey | Statutory liability for violation of §§ 13-21-105 and 18-13-109, C.R.S. |
| | Eight | McKillop, Soares, Messer, Martinez, Glandon, Lacey, CICS, and School District | Strict liability for abnormally dangerous activity |
| | Nine (sic) | (sic) | no claim pleaded |
| | Ten | Jane Roes 1, 2, and 3 | Negligence |

| Plaintiff in intervention | Defendant | Claim number | Claim |
|---|---|---|---|
| Scottsdale | McKillop, Soares, Messer, Martinez, Glandon, Lacey | One | Negligence |
| | McKillop | Two | Negligent supervision |
| | McKillop, Soares, Messer, Martinez, Glandon, Lacey | Three | Ultrahazardous activity |
| | McKillop, Soares, Messer, Martinez, Glandon, Lacey | Four | Statutory liability for violation of § 13-21-105, C.R.S. |
| | McKillop, Soares, Messer, Martinez, Glandon, Lacey | Five | Exemplary damages |
| | McKillop | Six | Third-party liability under Term Special Use Permit |

| Plaintiff in intervention | Defendant | Claim number | Claim |
|---|---|---|---|
| Colorado Casualty | McKillop, Soares, Messer, Martinez, Glandon, and Lacey | One | Negligence |
| | CICS | Two | *Respondeat superior* for acts and omissions of McKillop |
| | McKillop, Soares, Messer, Martinez, Glandon, and Lacey | Three | Statutory liability for violation of §§ 13-21-105 and 18-13-109, C.R.S. |
| | School District | Four [DISMISSED 4/17/98] | *Respondeat superior* for acts and omissions of McKillop and CICS |
| | McKillop, Soares, Messer, Martinez, Glandon, and Lacey | Five | Exemplary damages |

| Cross-claims of defendant United States of America | Defendant | Claim Number | Claim |
|---|---|---|---|
| | Soares, Messer, Martinez, Glandon, and Lacey | One | Negligence |
| | Soares, Messer, Martinez, Glandon, and Lacey | Two | Liability pursuant to § 13-21-105, C.R.S. |
| | McKillop | Three | Liability under Term Special Use Permit |

The following motions are pending:

| Filing party | Motion | Basis | Responding party |
|---|---|---|---|
| CICS, School District, and McKillop | to dismiss | Fed.R.Civ.P. 12(b)(1) and (6) | all plaintiffs |
| CICS and McKillop | to dismiss | Fed.R.Civ.P. 12(b)(1) and (6) | Colorado Casualty |
| McKillop | to dismiss | Fed.R.Civ.P. 12(b)(1) and (6) | Scottsdale |
| McKillop | to dismiss | Fed.R.Civ.P. 12(b)(1) and (6) | United States |

### III.

Pursuant to Fed.R.Civ.P. 12(b)(1), Mr. McKillop, CICS, and the School District move to dismiss for lack of subject matter jurisdiction, all claims brought against them by the individual Plaintiffs and intervening Plaintiffs Scottsdale Insurance Company (Scottsdale) and Colorado Casualty Insurance Company (Colorado Casualty) (collectively, Plaintiffs). These Defendants assert they are immune from Plaintiffs' claims pursuant to the State of Colorado Governmental Immunity Act, § 24,10–101, *et seq.*, C.R.S. (CGIA).

### A. *Law*

#### 1. *Rule 12(b)(1)*

A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Zerr v. Johnson,* 894 F.Supp. 372, 374 (D.Colo. 1995); *see Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 924 (Colo.1993) (immunity under the CGIA is a jurisdictional issue). Under Rule 12(b)(1), I have wide discretion to consider affidavits, documents, and even hold a limited evidentiary hearing in making appropriate factual findings on jurisdictional issues. *See Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir. 1987). In deciding whether sovereign immunity has been waived, I may receive any competent evidence pertaining to the motion, including evidence outside the pleadings, without converting it to a summary judgment motion. *Trinity Broadcasting,* 848 P.2d at 924–25. Further, "[a]ny factual dispute upon which the existence of jurisdiction may turn is for the Court alone, and not a jury to determine." *Id.* The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974). Here, therefore, Plaintiffs have the burden to show that the moving defendants are not immune from suit. *Trinity,* 848 P.2d at 925.

#### 2. *CGIA*

With respect to actions against public entities, the CGIA provides, in pertinent part:

**24–10–106. Immunity and partial waiver.** (1) A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort ... except as provided otherwise in this section.

§ ·24–10–106(1), C.R.S.

The CGIA defines the term "public entity" as follows:

"Public entity" means the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city

and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof.

§ 24–10–103(5), C.R.S.

B. *The School District's Rule 12(b)(1) motion to dismiss claim six for respondeat superior*

As a CGIA public entity immune from suit for actions which lie in tort or could lie in tort, the School District seeks dismissal of individual Plaintiffs' claim six. The individual Plaintiffs concede that the School District is a "public entity" for purposes of the CGIA. Also, there is no dispute that claim six lies in tort or could lie in tort. Therefore, absent a CGIA immunity exception, the School District is entitled to dismissal of individual Plaintiffs' claim six. *See* Section III. E, *infra.*

C. *CICS' Rule 12(b)(1) motion to dismiss individual Plaintiffs' claim five and Colorado Casualty's claim two for respondeat superior*

Plaintiffs contend that CICS is not a public entity pursuant to the CGIA and, therefore, is not entitled to immunity. Whether a charter school established pursuant to the Charter Schools Act (CSA), § 22–30.5–101, C.R.S., is entitled to immunity pursuant to the CGIA is an issue of first impression in the Colorado courts. Recently, however, in *Academy of Charter Schools v. Adams County School Dist. No. 12,* —— P.2d ——, 1999 WL 304697 (Colo. App.1999), the Court held that a charter school did not possess either express or implicit authority to sue the School District that granted its charter pursuant to the CSA. *Id.* In deciding this collateral but related issue, the Court stated that "the General Assembly expressed its unambiguous intent that a charter school is a part of the school district that grants its charter." *Id.* For the following reasons, I agree with the *Academy of Charter Schools* court. I hold that charter schools established pur-

suant to the CSA are public entities and, thus, absent a CGIA immunity exception, entitled to immunity from liability in claims which lie in tort or could lie in tort.

### 1. *Public entity*

There is no dispute that CICS is a charter school established pursuant to the CSA. Plaintiffs contend, however, that CICS is not a public entity as contemplated by the CGIA because: 1) a public school is not necessarily a public entity for sovereign immunity purposes; 2) CICS is not a public entity merely by virtue of its association with the School District; 3) CICS is not a public entity because it operates more like a private school than a public school; and 4) CICS' unique characteristics eliminate the possibility that it is a public entity entitled to sovereign immunity. I disagree.

a. *CICS as an "agency, instrumentality, or political subdivision" of the School District*

Plaintiffs concede that the School·District is clearly a public entity for purposes of the CGIA. According to Plaintiffs, however, CICS is entitled to CGIA immunity only if it can properly be considered an "agency" or "instrumentality" of the School District.

■ The CGIA provides sovereign immunity not only to school districts but also to every kind of agency, instrumentality, or political subdivision of the school district which is organized pursuant to law. § 24–10–106(1). The terms "agency," "instrumentality," and "political subdivision" are not defined by the CGIA. Under traditional rules of statutory construction, undefined statutory terms are given their plain and ordinary meaning. *Farina v. City and County of Denver,* 940 P.2d 1004, 1006–07 (Colo.App.1996).

"Agency" is defined as "[t]he relation created by express or implied contract or by law whereby one party delegates the transaction of some lawful business with

more or less discretionary power to another...." Black's Law Dictionary, 6th ed.1990, p. 62. "Instrumentality" is defined as "[s]omething by which an end is achieved; a means, medium, or agency...." *Id.* at 801. "Political subdivision" is defined as "[a] division of the state made by proper authorities thereof, acting within their constitutional powers, for purposes of carrying out a portion of those functions of state which by long usage and inherent necessities of government have always been regarded as public." *Id.* at 1159.

■ In analyzing whether CICS meets the definition of an agency, instrumentality and/or a political subdivision of the School District, I look to the Charter Schools Act. The CSA was enacted by the Colorado General Assembly "to advance a renewed commitment *by the State of Colorado* to the missions, goals, and diversity of *public education....* " § 22–30.5–102(3) (emphasis added). The legislative declaration states that "[i]t is the obligation of all Coloradans to provide all children with schools that reflect high expectations ..." *Id.* at 102(1)(a). "Education reform *is in the best interests of the State* in order to strengthen the performance of elementary and secondary *public school pupils....* " *Id.* at 102(1)(b) (emphasis added). In authorizing charter schools, it was the intent of the General Assembly to "create a legitimate avenue for parents, teachers, and community members to take responsible risks and create new, innovative, and more flexible ways of educating all children *within the public school system.*" *Id.* at 102(3) (emphasis added). Further, "the General Assembly [sought] to create an atmosphere in Colorado's *public school system* where research and development in developing different learning opportunities is actively pursued." *Id.* (emphasis added).

This language reflects clear delegation by the State of Colorado to CICS, a lawfully created charter school, of the power to conduct the business of educating public school pupils. *See Academy of Charter Schools,* 1999 WL 304697, — P.2d —. The relationship between CICS and the State, authorized by statute and created by contract, includes delegation of some of the State's public education power to CICS to facilitate "new, innovative and more flexible ways of educating all children within the public school system." § 22.30.5–102(3). Moreover, the CSA grants charter schools discretion to operate quasi-independently from the school district, and allows the charter school to contract with the school district to obtain this agency power. *Id.* at 104; *See Academy of Charter Schools,* 1999 WL 304697, — P.2d —. Charter schools serve as one means by which the end of education reform sought by the General Assembly is obtained.

Plaintiffs argue that CICS is "too independent and autonomous" to be an agency or instrumentality of the School District. I disagree. Despite some degree of statutory autonomy, charter schools are "accountable to the school district's local board of education for purposes of insuring compliance with applicable laws and charter provisions and the requirements of Section 15 of Article IX of the State Constitution." § 22–30.5–104(4); *See Academy of Charter Schools,* 1999 WL 304697, — P.2d —.

Plaintiffs' argument that CICS cannot operate both as a nonprofit corporation and as a public school is likewise unpersuasive. The CSA provides specifically that:

[a] charter school may organize as a nonprofit corporation pursuant to the "Colorado Nonprofit Organization Act," ... which shall not affect its status as a public school for any purposes under Colorado law.

§ 22–30.5–104(4), C.R.S.; *See also Academy of Charter Schools,* 1999 WL 304697, — P.2d —.

2) *CICS' association with the School District—public entity or licensee?*

Relying on *Davenport v. Community Corrections of the Pikes Peak Region, Inc.,*

942 P.2d 1301 (Colo.App.1997), *cert. granted, affirmed by* 962 P.2d 963 (Colo.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999), Plaintiffs argue that CICS is not a public entity merely by virtue of its association with the School District. Rather, according to Plaintiffs, it is no more than a "licensee" of the School District. I again disagree.

*Davenport* involved the liability of a community corrections facility which admitted it was a nongovernmental agency. The legislative declaration of the Community Corrections statute at issue in *Davenport,* specifically allowed the use of correctional facilities and programs developed by the "department [of corrections], units of local government, and *nongovernmental agencies....* " *Davenport,* 942 P.2d at 1304 citing Colo.Sess.Laws 1987, ch. 331, 1 17–27–101 at 1824 (1st Regular Session Supp.) (emphasis added). In contrast, the CSA refers repeatedly to charter schools as public schools operating within the public school system. *See* § 22.30.5–101.5 *et seq., passim.* Indeed, the CSA forbids the "application to convert a private school ... into a charter school...." § 22–30.5–106(2). Thus, *Davenport* is distinguishable.

■ Plaintiffs argue also that CICS, as a charter school, is a mere licensee of the School District. Plaintiffs ignore the plain and ordinary meaning of the term "charter" which is defined as "an instrument in writing from the sovereign power of a state...." Webster's Third New International Dictionary, 1986, p. 378; *accord* Black's Law Dictionary, 6th ed.1990, p. 235. The CSA is not merely a license to operate the CICS. It is a duly authored and enacted grant of authority from the Colorado General Assembly to Colorado state school districts to create charter schools. Under these circumstances, I cannot conclude that CICS is a licensee of the School District. ˋ

3. *CICS operational characteristics*

Plaintiffs assert that CICS is not entitled to immunity because it operates more like a private school than a public school based on its nonprofit status, its own elected board, its lack of state funding, and the existence of contract and employment agreements between CICS and the School District. I am not persuaded.

a. *nonprofit status*

As set forth in § 22–30.5–104(4), the CSA allows charter schools to organize as nonprofit corporations without affecting their status as public schools for any purposes under Colorado law. *See Academy of Charter Schools,* 1999 WL 304697, —— P.2d ——. Plaintiffs' claim to the contrary is without merit. *See id.*

b. *elected governing board*

■ The CSA allows CICS to be administered and governed by its own elected board. The manner of a charter school's administration and governance, however, must be agreed to by the local board of education. § 22–30.5–104(4). Furthermore, CICS' governing board is "accountable to the school district's local board of education for purposes of insuring compliance with applicable laws and charter provisions and the requirements of Section 15 of Article IX of the State Constitution." *Id.* at 104(2). Rather than operating independently, CICS' governing board is subject to oversight and regulation not only by the School District's board of education, but by the state board of education. *Id.* at 104. Hence, the fact that CICS is allowed to have its own elected governing board does not defeat its status as a public entity.

c. *funding*

■ Plaintiffs contend that CICS is not a public entity because it is not fully funded by the School District. It is undisputed, however, that eighty-five percent of CICS' operating expenses is received from the School District. Moreover, CICS re-

ceives unreimbursable human resources, business services, payroll services, risk management services, insurance coverage, and legal services from the School District. Def. Reply to Colorado Casualty Resp., Ex. A, p. 8; Schedule 1 and 2; Ex. B. In addition, CICS receives federal and state aid grants. *Id.* at Ex. A, p. 7.

The amount of CICS's operating expenses not provided directly by the School District or indirectly from the State of Colorado or state taxpayers is minimal compared to the amount provided directly or indirectly from state sources. Consequently, the fact that CICS is not fully funded by the School District cannot defeat its status as a public entity.

This conclusion is buttressed by *Graham v. State of Colorado,* 956 P.2d 556 (Colo.1998). There, the Colorado Supreme Court analyzed the funding level of the University of Northern Colorado (UNC), a state university, in determining whether UNC was entitled to immunity under the "arm of the state" doctrine. Although factually dissimilar, the Court's analysis is sufficiently analogous to aid my decision here.

The *Graham* plaintiffs argued that UNC received tuition income, grants, and gifts from sources other than the State, its main funding source. In rejecting that argument, the Court wrote:

> [t]he mere fact that an entity otherwise funded by general fund dollars receives some cash fund receipts does not convert that entity into something other than a state agency. Most, if not all, state agencies do receive some income from cash receipts; however, they remain subject to the authority and discretion of the General Assembly for budgetary purposes.

*Id.* at 565. Although CICS receives approximately 15% of its budget from some source other than its main funding sources, this does not defeat its status as a public entity.

d. *contracts*

 Plaintiffs claim that CICS is not a public entity because it contracts with the School District and forms employment contracts with its teachers. The CSA allows a charter school to contract for services, prepare its own budget, and handle its own personnel matters. § 22–30.5–104, C.R.S. Nevertheless, a charter school's authority is subject to a charter application which must be approved by the local board of education consistent with the General Assembly's declared purposes. *See* §§ 22–30.5–106 and 107. Charter schools were authorized to increase parental and community involvement with public schools and to generate "new, innovative and more flexible ways of educating all children within the public school system...." *Id.* at 102(2)(g); 102(3). Consonant with the General Assembly's stated purposes in enacting the CSA, I conclude that CICS' unique characteristics, including its ability to contract for services, prepare its own budget, and handle its own personnel matters, does not render it a private entity.

4. *CICS' nonprofit corporate status*

 Plaintiffs reason that because, pursuant to the Colorado Nonprofit Corporations Act, § 7–22–101(b), C.R.S., CICS enjoys the rights, powers, and privileges of a Colorado nonprofit corporation, it has the power to be sued and, thus, is not immune. I disagree.

It undisputed that CICS is a nonprofit corporation and in Colorado, nonprofit corporations can sue and be sued. Thus, Plaintiffs conclude that CICS has relinquished any immunity it might possess. However, The plain language of § 22–30.5–104(4) provides that a charter school's nonprofit corporate status does not affect its status as a public school for *any* purposes pursuant to Colorado law. *Id.*

Plaintiffs cite authority from other jurisdictions that school districts which consent to be sued lose their immunity. *See e.g. Belcher v. Jefferson County Bd. of Education,* 474 So.2d 1063 (Ala.1985); *East-*

*wind Developers, Ltd. v. Board of Education for the City of Valdosta*, 238 Ga. 587, 234 S.E.2d 504 (1977).

In *Eastwind,* a city board of education lost its governmental immunity by express statutory language that the board of education "is ... authorized and empowered to sue and be sued...." *See* Ga.L.1931, p. 1024, at p. 1025; *Eastwind,* 234 S.E.2d at 505. The CSA contains no such provision.

In Alabama, state sovereign immunity is provided by the state constitution: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14; *Belcher v. Jefferson County Bd. of Educ.*, 474 So.2d 1063, 1065 (Ala.1985). Pursuant to statute, however, county boards of education were given the right to sue and contract. *See* Section 16–8–40, Ala.Code 1975. As a result, the boards of education lost immunity as to breach of contract suits. *See Sims v. Etowah County Bd. of Educ.*, 337 So.2d 1310 (Ala.1976).

Unlike Georgia and Alabama, the CSA contains a provision preserving a charter school's status as a public school despite its corporate status. *See* § 22–30.5–104(4). Moreover, Plaintiffs do not cite and I am unaware of any Colorado authority supporting their position. Under these circumstances, I conclude that CICS' status as a nonprofit corporation does not defeat its status as a public entity.

Accordingly, I hold that under the CSA, a charter school is an agency, instrumentality, and political subdivision of the School District. There being no dispute that the School District is a public entity as contemplated by the CGIA, I hold further that CICS is also a public entity pursuant to the CGIA. Thus, unless an immunity exception exists, CICS and the School Board are entitled to dismissal of the claims against them.

### D. *Mr. McKillop's Rule 12(b)(1) motion to dismiss claims based on his status as a public employee*

Mr. McKillop moves to dismiss the claims of Plaintiffs and Colorado Casualty on the basis that he is a public employee under the CGIA and, thus, is entitled to immunity. These Plaintiffs argue that Mr. McKillop is not a public employee entitled to immunity under the CGIA because CICS is not a public entity.

Under § 24–10–118(2)(a):

[a] public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, ... the common law, or otherwise, which lies in tort or could lie in tort ... and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton...."

It is undisputed that Mr. McKillop, as a CICS employee, receives his paychecks from the School District, McKillop Depo., p. 270, is a member of the Public Employees' Retirement Association pursuant to § 22–30.5–111(2), and is considered a School District employee. McKillop employment forms, Ex. L, Supplemental Reply Brief.

Having found that CICS is a public entity entitled to sovereign immunity under the CGIA, I conclude that Mr. McKillop is a public employee pursuant to the CGIA and, as a result, is entitled, in the first instance to immunity.

### E. *Plaintiffs' alternative arguments concerning waiver of immunity*

1. *"Dangerous condition" exception. § 24–10–106(1)(e), C.R.S.*

Plaintiffs contend that even if the School District, CICS, and Mr. McKillop are entitled to CGIA immunity, that immunity has been waived pursuant to § 24–10–106(1)(e), the dangerous condition exception. I find no waiver.

Plaintiffs allege that Mr. McKillop maintained, on behalf of CICS, the cabin and

grounds used by CICS as a recreational facility for its students. Third Amended C/O ¶ 34. They allege further that "the cabin and grounds used by McKillop constituted a public facility in a recreation area maintained by CICS," *id.* at ¶ 35, and that "[t]he facility was in a dangerous condition due to the use of campfires therein during periods when campfires constituted an abnormally dangerous activity." *Id.*

Pursuant to § 24–10–106(1)(e), immunity is waived by a public entity in an action for injuries resulting from:

> (e) a dangerous condition of any public ... facility located in any park or recreation area maintained by a public entity.... Nothing in this paragraph (e) ... shall be construed to prevent a public entity from asserting sovereign immunity for an injury caused by the natural condition of any unimproved property, whether or not such property is located in a park or recreation area....

§ 24–10–106(1)(e), C.R.S. As to Mr. McKillop, § 24–10–118(2) provides that a public employee's sovereign immunity is waived if one of the exceptions set forth in § 24–10–106(1) applies.

Plaintiffs must prove each element of the exception asserted. *Smith v. Town of Snowmass Village,* 919 P.2d 868, 871 (Colo.App.1996). Here, then, Plaintiffs must prove:

> 1. that a dangerous condition existed;
> 2. that such dangerous condition was of a public facility located in a park or recreation area; and
> 3. that such public facility was constructed or *maintained by the public entity in question.*

§§ 24–10–103(1) and 106(1)(e) (emphasis added).

> "Dangerous condition" is defined as:
> a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist and which condition is proximately caused by the negligent act or omission of the pub-

lic entity in constructing or maintaining such facility.... For the purposes of this subsection ..., a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate. The mere existence of wind, water, snow, ice, or temperature shall not, by itself, constitute a dangerous condition.

§ 24–10–103(1), C.R.S.

■ The language "or the use thereof" contained in the "dangerous condition" definition modifies the term "physical condition" and not the term "facility." *Jenks v. Sullivan,* 826 P.2d 825, 827 (Colo.1992), *overruled in part on other grounds, Bertrand v. Board of County Comm'rs of Park County,* 872 P.2d 223 (Colo.1994). Thus, a condition is "dangerous" for purposes of sovereign immunity only if it relates to the physical or structural condition of the facility at issue.

The plain language of the "dangerous condition" definition supports this interpretation. The definition specifically limits the waiver exception to those "physical conditions related to the construction or maintenance of the facility". § 24–10–103(1). In this case, Plaintiffs have not alleged a physical or structural defect of a facility that caused Plaintiffs' injuries.

■ Plaintiffs' claim of dangerous weather conditions does not change this analysis. The "dangerous condition" definition provides that the existence of wind or temperature shall not, by itself, constitute a dangerous condition. § 24–10–103(1), C.R.S. Moreover, the alleged dangerous condition that caused Plaintiffs' injuries was a condition of unimproved property. Section 24–10–106(1)(e) states that:

> nothing in this paragraph (e) ... shall be construed to prevent a public entity

from asserting sovereign immunity for an injury caused by a natural condition of any *unimproved property,* whether or not such property is located in a park or recreation area. . . .

Section 24–10–106(1)(e) (emphasis added). Thus, immunity is waived pursuant to § 24–10–106(1)(e) only where the dangerous condition alleged is of a physical improvement to the property, such as a building, boat dock, or fence.

Plaintiffs characterize the fire pit constructed by the students at the campsite as the "dangerous condition" of a physical improvement to the property. They argue that the *Jenks* court's interpretation of the CGIA's definition of "dangerous condition" is limited to dangerous conditions stemming from a physical or structural defect in public *buildings.* *See* Response Brief, pp. 6–8. No Colorado case has addressed facilities which are *not* buildings. *Id.*

In support of their argument, Plaintiffs cite Blacks Law Dictionary's definition of facility as "[s]omething that is built or installed to perform some particular function." Black's Law Dictionary, Fifth Edition, p. 591. This definition is consistent with language in *Longbottom v. State Bd. of Community Colleges and Occupational Educ.,* 872 P.2d 1253, 1254 (Colo.App.1993) in which the dissent states:

> It is therefore plain that the General Assembly recognized that the word "facility" is a more comprehensive term than the word "building" and that it intended to use the words selectively rather than interchangeably.

*Id.*

Plaintiffs state that they use the term "facility" in the sense of the word "installation," not in the sense of "building." Based on this definition, Plaintiffs argue also that the fire pit built by the students is the "facility" constituting a "dangerous condition." *See* Response Brief, pp. 7–8; Third Amended Complaint, ¶¶ 10, 13–14, 26, 31–32, 36.

Assuming *arguendo,* that Plaintiffs definition of "facility" is correct, under § 24–10–103(1), they still must prove that the fire pit was constructed or maintained by the public entity. *See* § 24–10–103(1). If their definition is too broad, they must, at a minimum, prove that the cabin used by the students is a public facility maintained by the public entity. Plaintiffs fail under either theory.

■ Mr. McKillop and his spouse leased the land where the cabin was located for their own private, personal use. The lease was entered into with the United States Forest Service in 1993, before CICS or the CSA was in existence. The mere use of the cabin for a school-sponsored field trip does not transform it into a public facility owned or maintained by CICS or by the School District.

■ Moreover, the cabin and surrounding property were not maintained by the School District or CICS, as required for application of the "dangerous condition" exception to immunity. The fire began on unimproved property owned and maintained by the United States Forest Service, some distance from the cabin and property leased by Mr. McKillop.

Nor can such use render United States Forest Service land a recreation area maintained by CICS or the School District. CICS and the School District have no control over, and no responsibility for, maintaining United States Forest Service land or Mr. McKillop's cabin.

■ Rocks placed in a circle by a group of students are not a "facility" as claimed by Plaintiffs. Rocks put on the ground by students do not constitute construction of a facility by the public entity as required by § 24–10–103(1). Furthermore, a circle of rocks is not a *physical improvement* to the property, as required under § 24–10–106(1)(e) (Governmental immunity is not waived for conditions of "unimproved property."); and *Jenks. See Jenks,* 826 P.2d at 827.

To the extent that Plaintiffs claim that a "dangerous condition" existed because of wind, they may not prevail. The existence of wind does not create a dangerous condition for purposes of waiving governmental immunity. *See* § 24–10–103(1).

Under these circumstances, I conclude that there was no public facility constructed and maintained by the School District or CICS. Accordingly, the "dangerous condition" exception to immunity does not apply.

2. *Liability of CICS and the School District for Mr. McKillop's alleged willful and wanton conduct.*

a. *waiver of immunity*

Plaintiffs allege that CICS and the School District are not entitled to immunity because Mr. McKillop's actions and omissions were willful and wanton. Third Amended C/O ¶¶ 37, 41.

The waiver of governmental immunity for willful and wanton conduct is contained in § 24–10–105 which provides, in pertinent part:

No public entity shall be liable for [all actions which lie in tort or could lie in tort] ... except as provided in this article, and no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his duties and within the scope of his employment, unless such act or omission was willful and wanton....

Section 24–10–105, C.R.S.

■ The language concerning waiver of immunity for willful and wanton acts or omissions follows the second clause of the statute referring to a public employee's liability. There is no reference to willful and wanton acts or omissions in the first clause of the statute pertaining to public entities. I conclude, therefore, that § 24–10–105 operates as a waiver of a public *employee's* immunity but does not operate as a waiver of a public *entity's* immunity.

A comparison of the language of § 24–10–118(2)(a) and § 24–10–106(1) supports my conclusion. Section 24–10–118, titled **Actions against public employees-requirements and limitations** provides:

(2)(a). A public employee shall be immune from liability in any claim for injury ... which lies in tort or could lie in tort ... unless the act or omission causing such injury was willful and wanton....

Section 24–10–118(2)(a). In contrast, a similar provision pertaining to a public entity's immunity omits the "willful and wanton" language:

A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort ... except as provided otherwise in this section.

Section 24–10–106(1). Without express language imposing responsibility or liability on public entities for their employees' willful or wanton conduct, I conclude that the immunity of CICS and the School District is not waived.

Having concluded that there exists no immunity exception applicable to CICS and the School Board, these entities are entitled to dismissal of: 1) individual Plaintiffs' claim five and claim six, respectively, for *respondeat superior* and claim eight for strict liability for abnormally dangerous activity; and 2) Colorado Casualty's claim two for *respondeat superior* brought against CICS. *See Stump v. Gates,* 777 F.Supp. 808, 824 (D.Colo.1991), 986 F.2d 1429 (10th Cir.1993).

3. *Waiver of Mr. McKillop's immunity based on alleged willful and wanton actions and omissions*

Plaintiffs allege that any immunity Mr. McKillop may possess pursuant to §§ 24–10–105 and 118(2)(a) is waived because his alleged acts and omissions were willful and wanton. Mr. McKillop moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). Generally, under Rule 12(b)(1), a trial court may consider affidavits, documents, and even hold a limited evidentiary hearing in mak-

ing appropriate factual findings on jurisdictional issues without converting the Rule 12 motion to a Rule 56 summary judgment motion. *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987). Where, however, the jurisdictional issue is "intertwined with the merits of the case," the Tenth Circuit recognizes an exception to the general rule and permits the district court to treat the motion as one for summary judgment. *Id.* at 259. Plaintiffs' allegations that Mr. McKillop's conduct was "willful and wanton" is a jurisdictional issue as well as an element of their negligence claims. *See* Amended Complaint ¶¶ 29, 32. I therefore employ the Rule 56 standard to view the issue whether Mr. McKillop's actions were willful and wanton. This approach does not prejudice any party because each has submitted and relied on evidence beyond the pleadings.

### a. *Rule 56 summary judgment standard*

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed. R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### b. *Definition of "willful and wanton"*

The phrase "willful and wanton" is not defined in the CGIA. However, the majority of Colorado courts to address this issue have applied the following definition contained in Colorado's exemplary damages statute, § 13–21–102(1)(b), C.R.S. (1994): Willful and wanton conduct is "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff[s]." § 13–21–102(1)(b); *Zerr v. Johnson*, 894 F.Supp. 372, 376 (D.Colo.1995); *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) *citing Pettingell v. Moede*, 129 Colo. 484, 491, 271 P.2d 1038, 1042 (1954).

In a written, sworn statement Mr. McKillop described the following events:

> On Thursday, 5–16–96 I took a group of 16 students for an overnight trip to my cabin on Redskin Creek in Pike National Forest. We arrived at Thursday evening about 7:00 p.m. That night, four students set up a tent about a ½ mile from the cabin up two ridges. Another tent was set up close to the cabin. Later that night about 11:00 p.m.–12:00 p.m. I walked up to the tent site and noticed a fire pit the boys had made and they had a fire going. The conditions at the time were windy and very dry. I had the boys put out the fire which they did with water from a gallon jug. The next day which was Friday, the boys

came down in the morning and hardly returned to the campsite.

That night, Friday night, the boys returned to the campsite at about 10:00–11:00 p.m. I did not go up to the campsite. Apparently 3–4 of the boys relit the fire and w[ere] feeding the fire until 6:00–8:00 a.m. Saturday morning.

At about 10:30 a.m. the boys came down from the campsite and later stated that they had doused and put the fire out with water. . . .

Ex. 34A, Attachment 2.

During his deposition, Mr. McKillop testified that he was unaware that the students were going to build a campfire at the tent site up the ridge. McKillop Depo. Vol. 1, pp. 85–86. He denied knowing that the students were taking rocks from near the cabin to build a fire pit. *Id.* Also, according to Mr. McKillop, he did not authorize the boys to build a campfire. *Id.* at 154.

In an interview, Mr. McKillop stated that he visited the campsite on Thursday night about 11:00 p.m. and made the campers extinguish the campfire with water because it was windy. Pltf. Ex. 41 p. numbered as 000114. However, he could "still see some glowing embers." *Id.* Mr. McKillop noted that the students had carried rocks from the cabin to their campsite for use with their fire pit. *Id.* He told the boys to put the rocks [used to build the fire pit] back before leaving on Sunday. *Id.*

On Friday evening, there was a campfire in the fire pit located near his cabin. Mr. McKillop did not know whether there was a fire in the campsite fire pit because he did not visit the campsite. *Id.* He stated he was able to see a lantern at the campsite very late [on Friday evening] but did not see a campfire. Mr. McKillop later learned that the five students had a fire going all night on Friday night. *Id.*

Plaintiffs proffer conflicting evidence concerning these events. According to two students, rather than telling the camp-

ers to put out the fire, Mr. McKillop told them to make it smaller. *See* Messer Depo. p. 86; Glandon Depo. p. 81. Another student testified that the first night at the campsite, Mr. McKillop came up and at first said that he didn't want a fire at all. After a few of the students talked to Mr. McKillop, he then said that [a fire] was fine but it had to be put out before the students went to bed and it had to be small. He said "nothing big, something small." Martinez Depo. p. 30–31. Contrary to Mr. McKillop's accounts, a student testified that Mr. McKillop gave him permission to get rocks from the cabin area to build the fire pit. Glandon Depo. p. 39.

The parties do not dispute that during the four days preceding the fire, daytime humidities were low—between 11 and 12%—and precipitation levels were approximately 30% of normal since January 1996. Importantly, winds as high at 50 miles per hour had been recorded.

Plaintiffs base their claim that Mr. McKillop acted in a willful and wanton manner on allegations that he:

a. knew that under the highly inflammatory conditions of the Pike National Forest on May 18, 1996, maintaining a campfire was an abnormally dangerous activity, and he knew, or should have known of the existence of an unextinguished campfire caused by children under his supervision, Nathan Soares, Eli Messer, Loney Martinez, Troy Glandon, and Dustin Lacy;

b. permitted the children under his supervision to build a campfire near his cabin in the Pike National Forest;

c. failed to adequately monitor whether his instructions to extinguish the campfire were being observed; [and]

d. failed to monitor whether the campfire had been adequately extinguished.

Third Amended Complaint, ¶ 27.

The pertinent inquiry is the existence of a genuine issue whether Mr. McKillop was willful and wanton in: 1) permitting the campers to build a campfire under the

existing wind and weather conditions; 2) failing to monitor whether his instructions to extinguish the campfire were observed by the campers; and 3) failing to monitor whether the campfire had been adequately extinguished. These issues necessarily include determining whether Mr. McKillop was willful and wanton in failing to monitor whether the students built any other fires after Thursday evening.

■ It is disputed whether Mr. McKillop allowed the students to build and maintain a campfire on Thursday night, May 15, 1996. It is undisputed, however, that Mr. McKillop did not return to the campsite on Friday evening to determine if another campfire had been built. Also, there is no evidence that he told the campers not to build any more campfires after discovering the Thursday night campfire. It is disputed whether Mr. McKillop knew the campers were building a fire pit at the campsite and whether he allowed rocks from the cabin area to be taken to the campsite to be used in its construction. Consequently, Plaintiffs have demonstrated the existence of genuine questions of fact to be tried. *Otteson,* 622 F.2d at 519; Fed.R.Civ.P. 56(e). Based on the documents submitted, and viewing the evidence in a light most favorable to the Plaintiffs, reasonable jurors could find by a preponderance of the evidence that Mr. McKillop's conduct was willful and wanton. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Accordingly, I deny Mr. McKillop's Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction.

F. *Mr. McKillop's Rule 12(b)(6) motion to dismiss claim three for statutory liability based on violation of §§ 13–21–105 and 18–13–109, C.R.S.*

In the alternative, pursuant to Fed.R.Civ.P. 12(b)(6), Mr. McKillop moves to dismiss claim three brought by the individual Plaintiffs and Colorado Casualty's claim three for statutory liability pursuant to §§ 13–21–105 and 18–13–109 for failure to state a claim upon which relief can be granted. I will grant the motion.

1. *Section 18–13–109, C.R.S.*

Section 18–13–109, a criminal statute, subjects a person to criminal liability when such person knowingly or with criminal negligence "sets on fire, or causes to be set on fire any woods, prairie, or grounds ... or who ... permits a fire, set or caused to be set by him, to pass from his own grounds to the injury of another person...." *Id.*

■ Section 18–13–109 contains no explicit language allowing a citizen to bring a civil action for its violation. A statute that does not expressly authorize a private right of action may implicitly do so if three factors are present:

1. the plaintiff is within the class for whose benefit the statute was enacted;
2. the legislature intended to create a private remedy; and
3. an implied private right of action would be consistent with the purpose of the legislative scheme. *Allstate Ins. Co. v. Parfrey,* 830 P.2d 905 (Colo.1992).

■ Beyond question, the individual Plaintiffs are within the class for whose benefit § 18–13–109 was enacted. However, criminal statutes are not intended to be enforced through private legal actions. Colorado Constitution, Art. VI, § 13 established the office of the district attorney and the legislature defined the district attorneys' duties to include enforcement of criminal statutes. *See* § 20–1–101, *et seq.,* C.R.S. Unless otherwise provided by statute, the district attorney is the sole authority charged with enforcement of criminal statutes. *People ex rel. Losavio v. Gentry,* 199 Colo. 153, 606 P.2d 57 (1980).

■ Plaintiffs contend also that pursuant to § 18–13–109, Mr. McKillop is strictly liable for their damages. Resp. pp. 8–10. Even if there were a basis for private

enforcement of this statute, strict liability means "liability without fault." Blacks Law Dictionary, 6th ed. p. 1422 (1986). The statute contains the *mens rea* of knowledge or criminal negligence before liability may be imposed. Thus, an action for strict liability for violation of § 18–31–109 may not lie.

### 2. *Section 13–21–105, C.R.S.*

 Section 13–21–105 provides "[i]f any person sets fire to any woods or prairie so as to damage any other person, such person shall make satisfaction for the damage...." In contrast to § 18–13–109, this civil statute does not address the culpability required for liability. However, it omits the language "causes to be set on fire" found in the criminal statute. Consequently, § 13–21–105 imposes civil liability only against those persons who actually set the fire. It is undisputed that Mr. McKillop did not build the campfire that led to the forest fire or set fire to the woods. Therefore, I will dismiss claim three brought by individual Plaintiffs and Colorado Casualty's claim three against Mr. McKillop.

### G. *Rule 12(b)(6) motion to dismiss claim eight for strict liability—ultrahazardous activity filed by Mr. McKillop, CICS, and the School District*

The individual Plaintiffs allege that Mr. McKillop, CICS and the School District are strictly liable to them because the use of campfires under the highly inflammable conditions existing on May 18, 1996, in a forest bordering nearby residential areas, constituted an abnormally dangerous activity. Third Amended C/O ¶ 44. Assuming *arguendo*, that they are not entitled to CGIA immunity, these Defendants move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss claim eight for failure to state a claim upon which relief can be granted. I will grant the motion.

A Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 870 (10th Cir.1992). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. All well-pleaded factual allegations, as opposed to conclusory allegations, are accepted as true, *see Ash Creek Mining Co.,* 969 F.2d at 870, and viewed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). All reasonable inferences must be liberally afforded in the plaintiffs favor. *GFF Corp. v. Associated Wholesale Grocers Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997).

 Whether an activity is ultrahazardous and, therefore, subject to strict liability, is a question of law for a court to decide. 3 Restatement (Second) of Torts, § 520, comment 1 (1977); *Clark–Aiken Co. v. Cromwell–Wright Co., Inc.,* 367 Mass. 70, 323 N.E.2d 876 (1975); *Langan v. Valicopters, Inc.,* 88 Wash.2d 855, 567 P.2d 218 (1977).

To determine whether an activity is ultrahazardous, I look to the factors outlined in Restatement (Second) of Torts § 520 (1977):

1. existence of a high degree of risk of some harm to the person, land or chattels of others;

2. likelihood that the harm that results from it will be great;

3. inability to eliminate the risk by the exercise of reasonable care;

4. extent to which the activity is not a matter of common usage;

5. inappropriateness of the activity to the place where it is carried on; and

6. extent to which its value to the community is outweighed by its dangerous attributes.

3 Restatement (Second) of Torts § 520 (1977).

In Colorado, only explosive blasting and impounding of water have been recognized as ultrahazardous activities subject to strict liability. *Garden of the Gods Village v. Hellman,* 133 Colo. 286, 294 P.2d 597 (1956) (explosives blasting); *Garnet Ditch & Reservoir Co. v. Sampson,* 48 Colo. 285, 110 P. 79 (1910) (water impounding). Colorado courts have declined to extend strict liability to the disposition of dangerous cleaning compounds, *Forrest v. Imperial Distribution Services, Inc.,* 712 P.2d 488, 491 (Colo.App.), *rev'd on other grounds,* 741 P.2d 1251 (Colo.1985), and to natural gas transmission. *Hartford Fire Ins. Co. v. Public Serv. Co. of Colorado,* 676 P.2d 25, 27 (Colo.App.1983).

■ Given the weather and wind conditions present, there existed a high degree of risk of harm and it was likely that the resulting harm would be great. However, campfire building is a common activity which, with the exercise of reasonable care, is appropriately carried on in the forest. Moreover, the inherent risks of a campfire can be reduced or eliminated by limiting its size and location, and fully extinguishing it. Therefore, on balance, I conclude as a matter of law that campfire building in a forest is not an ultrahazardous activity and will grant Defendants' Rule 12(b)(6) motion to dismiss claim eight brought by the individual Plaintiffs.

H. *Mr. McKillop's Rule 12(b)(1) and (6) motions to dismiss Scottsdale's claims and cross-claim three brought by the United States*

1. *Scottsdale's claims*

Mr. McKillop asserts that he is entitled to Rule 12(b)(1) dismissal of Scottsdale's claims one through six based on its failure to file the requisite notice of claim pursuant to CGIA § 24–10–109. I agree.

Before bringing any action against a public employee which lies in tort or could lie in tort, a claimant is required to file a notice of claim. § 24–10–109. Compliance with the notice requirement:

> *shall* be a jurisdictional prerequisite to any such action against a public employee, *and shall be required* whether or not the injury sustained is alleged in the complaint to have occurred as a result of the willful and wanton act of such employee, and *failure of compliance shall forever bar any such action against a public employee.*

§ 24–10–118(1)(a) (emphasis added). It is undisputed that no notice of claim was filed by Scottsdale.

In response, Scottsdale states that it did not allege "that McKillop was a public employee in the course and scope of his employment which would entitle him to governmental immunity...." Resp. p. 9. Rather, Scottsdale contends governmental immunity does not apply based on the testimony of Mr. McKillop's supervisor, Pauline McBeth, that many of his actions were not approved by her and were not authorized by the school. McBeth Deposition, *passim.*

■ As a public employee, subject to the disputed willful/wanton exception, Mr. McKillop is entitled to CGIA immunity. Merely because Scottsdale did not allege Mr. McKillop was a public employee does not take him outside the protection of the CGIA. To conclude otherwise would render governmental immunity meaningless and thwart the statutory purpose of protecting taxpayers from excessive fiscal burdens associated with such tort litigation. *See* § 24–10–102. The structure of the CGIA allows waiver of a public employee's immunity if he is not acting within the scope of his employment or if his actions are willful and wanton. However, deciding whether a public employee has waived his governmental immunity, including whether a public employee is acting within the scope of his employment, occurs only after proper notice is filed. Therefore, having failed to file a notice of claim,

all of Scottsdale's claims which lie in tort or could lie in tort are barred.

Scottsdale argues that claim six for third-party liability under the Term Special Use Permit (Permit) sounds in contract rather than tort and, therefore, is not subject to the CGIA notice requirements.

The CGIA provides that where the claim alleged could sound in tort, such claim is barred by the CGIA, regardless whether the claimant frames it as a tort claim. § 24-10-109. Therefore, I look to the substance of claim six to determine whether it could lie in tort. *See Morrison v. City of Aurora*, 745 P.2d 1042, 1045 (Colo.App. 1987).

The allegations supporting claim six for third party liability under the Permit state that the Permit provides that "[t]he holder shall be liable for any damage suffered by the United States resulting from or related to use of this permit, including damages to National Forest resources and cost of fire suppression." Further, Scottsdale alleges that Mr. McKillop is liable for the damages sustained by its subrogee Linda Farris. The substance of the claim is that Mr. McKillop breached a duty of care. Thus, Scottsdale's third party beneficiary claim is a claim which could lie in tort. In addition, claims for damages resulting from the destruction of property could lie in tort. Therefore, claim six is subject to the CGIA notice requirements.

In the alternative, Mr. McKillop argues that Scottsdale's insured, Linda Farris, was not an intended beneficiary of the Permit. A nonparty to a contract is not entitled to a right of action on that contract unless the parties to it intended to benefit the nonparty. *Fourth & Main Co. v. Joslin Dry Goods Co.*, 648 P.2d 178 (Colo.App.1982). Such intent must be apparent from the terms of the agreement and surrounding circumstances.

Parties to the Permit are Mr. McKillop, his spouse, and the United States Forest Service. Ex. E. The pur-pose of the Permit was to lease U.S. Forest Service land to Mr. McKillop for recreational use. *Id.* Moreover, the Permit provides that "the holder shall exercise diligence in preventing damage to the land and property of the *United States*". *Id.* at p. 3 (emphasis added). The Permit states further that the holder "shall protect the scenic and aesthetic value of the *National Forest System lands . . . .*" *Id.* (emphasis added). Also, "[t]he holder shall fully repair and bear the expense for all damage, other than ordinary wear and tear *to National Forest lands, roads, and trails . . . .*" *Id.* (emphasis added). And the "holder shall be liable for any damage suffered *by the United States . . . .*" *Id.* at p. 4 (emphasis added). It is clear from the provisions of the Permit that no benefit to Scottsdale or its insured was intended. The Permit was an agreement solely for the benefit of the United States Forest Service, Mr. McKillop, and his spouse. Thus, the third party beneficiary claim fails as a matter of law. See *Fourth & Main Co.*, 648 P.2d at 182 (Where permit language contains no indication that it was intended to benefit any person or group of persons other than contracting parties, there is no third-party beneficiary claim).

I will, therefore, grant Mr. McKillop's Rule 12(b)(1) motion to dismiss Scottsdale's claims one through six for failure to provide notice pursuant to the CGIA. In the alternative, he is entitled to Rule 12(b)(6) dismissal of claim six on the grounds that Scottsdale's insured, Linda Farris, is not an intended beneficiary of the Permit.

### 2. *Mr. McKillop's Rule 12(b)(1) and (6) motions to dismiss the United States' cross-claim three*

In its third cross-claim, the United States seeks to hold Mr. McKillop liable pursuant to the terms of the Permit for damages it suffered as a result of the Buffalo Creek fire. Cross-claim Three. ¶ 14. Mr. McKillop asserts he is immune

from liability on this claim or, in the alternative, that the United States did not file a notice of claim within 180 days of the fire as required by §§ 24–10–109 and 24–10–118(2)(a). In addition, Mr. McKillop seeks dismissal of cross-claim three pursuant to Rule 12(b)(6) on the basis that the activities leading to the forest fire did not occur on property covered by the Permit. For the following reasons, I deny Mr. McKillop's Rule 12(b)(6) motion but grant his Rule 12(b)(1) motion.

The United States does not dispute that this claim sounds in tort for purposes of governmental immunity. Nevertheless, the United States claims that governmental immunity is not applicable because the several states waived their right to sovereign immunity. Also, the United States does not dispute that it failed to file a notice of claim pursuant to the CGIA. The United States contends that the CGIA's notice requirement is not applicable because, pursuant to the Supremacy Clause of the United States Constitution, a state may not impose notice requirements or shorten applicable federal statutes of limitations. For the following reasons, I will dismiss the United States' cross-claim three against Mr. McKillop.

a. *Sovereign immunity*

■ States have waived sovereign immunity to the federal government and the federal government may, consequently, sue any state without consent. *See United States v. State of California,* 328 F.2d 729, 731 (9th Cir.), *cert. denied,* 379 U.S. 817, 85 S.Ct. 34, 13 L.Ed.2d 29 (1964). Sovereign immunity is, however, a distinct legal concept from governmental immunity. *Shootman v. Department of Transportation,* 926 P.2d 1200, 1203, n. 2 (Colo.1996). "Sovereign immunity generally refers to the immunity of the state or federal government, whereas 'governmental immunity' refers to the immunity of all levels of government." *Id.* As *Shootman* recognized, the states relinquished a portion of their implicit sovereign immunity to the federal government, but governmental immunity remains applicable to other divisions of government, including school districts. *See id.*

Therefore, where, as here, a public employee is sued rather than the state, the pertinent doctrine is governmental immunity pursuant to, in this case, the CGIA.

b. *Notice requirements*

The United States suggests that the proper analysis calls for the application of the three-year limitations period prescribed in 28 U.S.C. § 2415 for suits by the U.S. involving money damages based on tort. It relies on a number of advantages over private litigants enjoyed by the United States because of its unique status as sovereign, specifically that it may not be subject to state statutes of limitations. *See* Resp. Brief pp. 2–3. Under the United States' rationale therefore, the 180–day notice requirement provided by the CGIA regarding tort claims is inapplicable. Where, as here, the Permit was issued under federal law, pursuant to the Supremacy Clause, federal law controls. Consequently, under the United States' reasoning, Colorado is precluded from shortening the statute of limitations or requiring notice within 180 days after the date of the discovery of the injury. *See* § 24–10–109. I disagree.

At first blush, several decisions seemingly lend support to this argument. *See e.g., Felder v. Casey,* 487 U.S. 131, 144–46, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *United States v. John Hancock Mutual Life Ins. Co.,* 364 U.S. 301, 305–306, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960); *United States v. St. John's General Hosp.,* 875 F.2d 1064, 1067 (3d Cir.1989); *United States v. Independent School Dist. No. 1 of Okmulgee County, Okla.,* 209 F.2d 578, 580–81 (10th Cir. 1954); *O'Donnell v. United States,* 428 F.Supp. 629, 634 (W.D.La.1977).

However, these cases all involve situations where the United States is enforcing its rights as sovereign pursuant to a spe-

cific federal statute. *See e.g., Felder,* 487 U.S. at 144–46, 108 S.Ct. 2302 (§ 1983 claim); *John Hancock,* 364 U.S. at 305–306, 81 S.Ct. 1 (property redemption pursuant to 28 USC § 2410(c)); *St. John's General Hosp.,* 875 F.2d at 1067 (Hill–Burton Act, 42 USC § 291); *Independent School Dist. No. 1,* 209 F.2d 578, 580–81 (federal law controls in connection with payment of federal funds); *O'Donnell,* 428 F.Supp. at 634. *See also, Glenn Elec. Co., Inc. v. Donovan,* 755 F.2d 1028 (3d Cir. 1985) (United States Housing Act, 42 U.S.C. SS 1437–1437j).

In this case, the United States' claim that it is entitled to damages arising out of the negligence of Mr. McKillop is a matter of substantive state law. Where, as here, both the Plaintiffs' and Defendant/cross-plaintiff United States' claims require the application of substantive state law, whether the United States is subject to a federal or state statute of limitations is an open question. *See United States v. California,* 507 U.S. 746, 757, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993). There, the Supreme Court expressly declined to resolve whether, in general, a state law action brought by the United States is subject to a federal or state statute of limitations. *Id.* The Court characterized the issue as "a difficult question." *Id.*

Absent guidance from the Tenth Circuit or the United States Supreme Court, I am persuaded by the reasoning contained in the following cases that when the United States brings a state law claim, the Supremacy Clause does not apply.

Historically, the Supremacy Clause as well as other public policies protecting the federal fisc have justified the United States' "continued enjoyment of significant litigation advantages over other parties seeking to enforce their rights, such as freedom from state statutes of limitations." *Santiago v. United States,* 884 F.Supp. 45, 50 (D.P.R.1995). But "when a claim procedure is a condition precedent to, or an integral element of a state-created cause of action, the United States is not exempt

from the time bar, even if a federal statute of limitations may otherwise apply." *United States v. State of California,* 932 F.2d 1346, 1351 (9th Cir.1991), *aff'd sub nom., United States v. California,* 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993).

The United States' cross-claim against Mr. McKillop is properly construed as a state tort claim alleging damages as a result of McKillop's alleged negligence. The United States does not dispute that its claim lies in tort or could lie in tort. Furthermore, the United States has set forth no claim under federal law.

 "Compliance with the notice provisions of the Governmental Immunity Act is a condition precedent to the commencement *of a state action* against a public entity." *Chacon v. Zahorka,* 663 F.Supp. 90, 93 (D.Colo.1987) (citation omitted) (emphasis added). Where the claim is based on state law, state substantive law applies and the Supremacy Clause does not control. *Id.; Miami Inter. Realty Co. v. Town of Mt. Crested Butte,* 579 F.Supp. 68, 77 (D.Colo.1984) (notice of claim provision of Colorado's Governmental Immunity Act would apply in a case based on diversity and not a federal question); *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 911 (7th Cir.1985) (where case is in federal court based on diversity and not a federal question, state substantive law, including a state notice of claim provision, applies); *See also Ruh v. Samerjan,* 32 F.3d 570 (7th Cir.1994) (state notice of claim provision applies to plaintiff's state, but not federal, claim); *Brissett v. Paul,* 141 F.3d 1157, 1998 WL 195945 (4th Cir. 1998)(state notice of claim requirement in governmental tort claims act applicable to plaintiff's state law claims); *Swanson v. Faulkner,* 55 F.3d 956, 965 (4th Cir.1995) (notice of claim provision applicable to claim for state administrative relief).

 It is only where a plaintiff has stated a federal claim that a notice of claim provision may be struck down based on supremacy because allowing a federal

claim to be limited by state law would defeat the objective of the federal law. *Felder*, 487 U.S. at 133, 108 S.Ct. 2302; *Miami Intern. Realty Co.*, 579 F.Supp. at 77 ("[T]o require notice of claim as a condition precedent of [a federal] suit 'would also unduly interfere with the federal action.' ") (citation omitted).

■ It is undisputed here that the United States' claim against Mr. McKillop is based solely upon state law. The mere issuance of Mr. McKillop's Special Use Permit does not convert this claim to one under federal law. Accordingly, state substantive law controls. The United States was required to comply with the CGIA notice requirements. *See* § 24–10–109 and 24–10–118(1)(a).

The United States' assertion that the notice of claim provision shortened the statute of limitations applicable to the United States is similarly without merit. The notice of claim provisions set forth in §§ 24–10–109 and 118 are not limitations on actions, but conditions precedent to the assertion of a claim against a public entity or public employee. *City and County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 763 (Colo.1992). Failure to file a notice of claim is a jurisdictional bar to the action. § 24–10–109 and 118(1)(a). Indeed, § 24–10–109(5) sets forth the explicit requirement that claimants against public entities and public employees must also comply with applicable statutes of limitations.

I conclude, therefore, that the United States was required to file a notice of claim pursuant to the CGIA. Having failed to do so, its third cross-claim against Mr. McKillop is jurisdictionally barred and must be dismissed for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1).

3. *Mr. McKillop's Rule 12(b)(6) motion*

■ I disagree with Mr. McKillop's argument that even if the United States were not required to comply with the CGIA's Notice of Claim provision, the United States' damages did not arise from the use of the subject property. There is no dispute that the Buffalo Creek forest fire had its origin in a campfire built off the property subject to the Permit. However, the Permit does not require that the cause of the damage originate on the property. Rather, the Permit states that Mr. McKillop "shall be liable for any damage suffered by the United States *resulting from or related* to use of this permit...." Ex. 44. (emphasis added). Mr. McKillop used the property covered by the Permit for the school camping trip. During the camping trip, the forest fire was started as a result of a campfire built by the students on the camping trip. Under these circumstances, I conclude that the damages claimed by the United States resulted from and were related to the Permit. Consequently, I deny Mr. McKillop's Rule 12(b)(6) motion.

Conclusion

Based on the reasoning set forth in this Memorandum Opinion and Order, listed below is the disposition of the following claims:

| Plaintiff | Claim Number | Defendant | Claim Disposition |
|---|---|---|---|
| Jerry King, Gail King, Curt Rogers, Aimee King-Rogers, David McGuire, and Jennifer McGuire | One | United States | Negligence<br><br>**NO MOTIONS FILED CLAIM PENDING** |
| | Two | McKillop | Negligence<br><br>**MOTIONS TO DISMISS DENIED**<br><br>**CLAIM PENDING** |
| | Three | McKillop | Statutory Liability for violation of §§ 13-21-105 and 18-13-109, C.R.S.<br><br>**RULE 12(B)(6) MOTION GRANTED**<br><br>**CLAIM DISMISSED** |
| | Four | McKillop,<br><br>Soares, Messer, Martinez, Glandon, and Lacy | Negligent infliction of emotional distress-<br><br>**MCKILLOP'S MOTION TO DISMISS DENIED**<br><br>**CLAIM PENDING AGAINST ALL DEFENDANTS** |
| | Five | CICS | Respondeat superior for acts and omissions of McKillop<br><br>**RULE 12(B)(1) MOTION GRANTED**<br><br>**CLAIM DISMISSED** |

| | Six | School District | Respondeat superior for acts and omissions of CICS and McKillop - **RULE 12(B)(1) MOTION GRANTED - CLAIM DISMISSED** |
|---|---|---|---|
| | Seven | Soares, Messer, Martinez, Glandon, and Lacy | Statutory liability for violation of §§ 13-21-105 and 18-13-109, C.R.S. **NO MOTIONS FILED- CLAIM PENDING** |
| | Eight | McKillop, CICS, and School District | Strict liability for abnormally dangerous activity **DEFENDANTS' CICS, AND SCHOOL DISTRICT RULE 12(b)(1) MOTIONS TO DISMISS GRANTED** **DEFENDANT MCKILLOP'S RULE 12(b)(1) MOTIONS TO DISMISS DENIED; RULE 12(b)(6) MOTION TO DISMISS GRANTED** **CLAIM DISMISSED AGAINST MCKILLOP, CICS, AND SCHOOL DISTRICT** |
| | | Soares, Messer, Martinez, Glandon, Lacey, | **CLAIM PENDING AGAINST REMAINING DEFENDANTS** |
| | Nine (sic) | (sic) | no claim pleaded |
| | Ten | Jane Roes 1, 2, and 3 | Negligence |

| Plaintiff in intervention | Claim Number | Defendant | Claim-Disposition |
|---|---|---|---|
| Scottsdale | McKillop | One | Negligence<br><br>**MCKILLOP'S RULE 12(B)(1) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED AGAINST MCKILLOP** |
| | Soares, Messer, Martinez, Glandon, Lacey | | **CLAIM PENDING AGAINST REMAINING DEFENDANTS** |
| | McKillop | Two | Negligent supervision –<br><br>**RULE 12(B)(1) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED** |
| | McKillop | Three | Ultrahazardous activity<br><br>**MCKILLOP'S RULE 12(B)(1) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED AGAINST McKILLOP** |
| | Soares, Messer, Martinez, Glandon, Lacey | | **CLAIM PENDING AGAINST REMAINING DEFENDANTS** |

| | McKillop | Four | Statutory liability for violation of §13-21-105, C.R.S.<br><br>**MCKILLOP'S RULE 12(B)(1) MOTION TO DISMISS GRANTED**<br><br>**IN THE ALTERNATIVE, MCKILLOP'S RULE 12(B)(6) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED AGAINST MCKILLOP** |
| | Soares, Messer, Martinez, Glandon, Lacey | | **CLAIM PENDING AGAINST REMAINING DEFENDANTS** |
| | McKillop | Five | Exemplary damages -<br><br>**MCKILLOP'S RULE 12(B)(6) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED AGAINST MCKILLOP** |
| | Soares, Messer, Martinez, Glandon, Lacey | | **CLAIM PENDING AGAINST REMAINING DEFENDANTS** |
| | McKillop | Six | Third-party liability under Term Special Use Permit<br><br>**MCKILLOP'S RULE 12(B)(1) MOTION TO DISMISS GRANTED** |

| Plaintiff in intervention | Defendant | Claim number | Claim |
|---|---|---|---|
| Colorado Casualty | McKillop | One | Negligence<br><br>**MCKILLOP'S RULE 12(B)(1) MOTION TO DISMISS DENIED** |
| | Soares, Messer, Martinez, Glandon, and Lacey | | **CLAIM PENDING AGAINST ALL DEFENDANTS** |
| | CICS | Two | Respondeat superior for acts and omissions of McKillop<br><br>**CICS' RULE 12(B)(1) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED** |
| | McKillop | Three | Statutory liability for violation of §§ 13-21-105 and 18-13-109, C.R.S.-<br><br>**MCKILLOP'S RULE 12(B)(1) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED AGAINST MCKILLOP** |
| | Soares, Messer, Martinez, Glandon, and Lacey | | **CLAIM PENDING AGAINST REMAINING DEFENDANTS** |
| | School District | Four | *Respondeat superior* for acts and omissions of McKillop and CICS<br><br>**CLAIM DISMISSED PURSUANT TO STIPULATION-4/17/98** |

| | | | |
|---|---|---|---|
| | McKillop | Five | Exemplary damages - Negligence<br><br>**MCKILLOP'S RULE 12(B)(1) MOTION TO DISMISS DENIED** |
| | Soares, Messer, Martinez, Glandon, and Lacey | | **CLAIM PENDING AGAINST ALL DEFENDANTS** |
| **Cross-claims of defendant United States of America** | **Defendant** | **Claim Number** | **Claim** |
| | Soares, Messer, Martinez, Glandon, and Lacey | One | Negligence<br><br>**NO MOTIONS FILED CLAIM PENDING** |
| | Soares, Messer, Martinez, Glandon, and Lacey | Two | Liability pursuant to § 13-21-105, C.R.S.<br><br>**NO MOTIONS FILED CLAIM PENDING** |
| | McKillop | Three | Liability under Term Special Use Permit -<br><br>**MCKILLOP'S RULE 12(B)1) MOTION TO DISMISS GRANTED**<br><br>**CLAIM DISMISSED**<br><br>**IN THE ALTERNATIVE, MCKILLOP'S RULE 12(B)(6) MOTION TO DISMISS IS DENIED** |

Accordingly, IT IS ORDERED that:

1. Defendant Wayne Emmett McKillop's Rule 12(b)(1) motion to dismiss is DENIED as to individual Plaintiffs' a) claim two for negligence; b) claim three for statutory liability for violation of §§ 13–21–105 and 18–13–109, C.R.S.; c) claim four for negligent infliction of emotional distress; and d) claim eight for strict liability for abnormally dangerous activity;

2. Defendant Wayne Emmett McKillop's Rule 12(b)(6) motion to dismiss is GRANTED as to individual Plaintiffs': a) claim three for statutory liability for violation of §§ 13–21–105 and 18–13–109, C.R.S.; and b) claim eight for strict liability for abnormally dangerous activity;

3. Defendant Wayne Emmett McKillop's Rule 12(b)(1) motion to dismiss is DENIED as to the following claims of Colorado Casualty Insurance Company: a) claim one for negligence; and b) claim five for exemplary damages;

4. Defendant Wayne Emmett McKillop's Rule 12(b)(6) motion to dismiss is GRANTED as to Colorado Casualty Insurance Company's claim three for statutory liability for violation of §§ 13–21–105 and 18–13–109, C.R.S.;

5. Defendant Wayne Emmett McKillop's Rule 12(b)(1) motion to dismiss is

GRANTED as to Scottsdale Insurance Company's claims one through six;

6. Defendant Wayne Emmett McKillop's Rule 12(b)(1) motion to dismiss is GRANTED as to defendant United States of America's cross-claim three for liability under Term Special Use Permit. Mr. McKillop's Rule 12(b)(6) motion to dismiss is DENIED as to defendant United States of America's cross-claim three for liability under Term Special Use Permit;

7. Defendant Community Involved Chartered School's Rule 12(b)(1) motion to dismiss is GRANTED as to individual Plaintiffs': a) claim five for respondeat superior for acts and omissions of Mr. McKillop; and b) claim eight for strict liability for abnormally dangerous activity;

8. Defendant Community Involved Chartered School's Rule 12(b)(1) motion to dismiss Colorado Casualty Insurance Company's claim two for respondeat superior for acts and omissions of Mr. McKillop is GRANTED;

9. Defendant Jefferson County School District R–1's Rule 12(b)(1) motion to dismiss is GRANTED as to individual Plaintiffs': a) claim six for respondeat superior for acts and omissions of Mr. McKillop; and b) claim eight for strict liability for abnormally dangerous activity; and

10. a status and scheduling hearing is set for June 17, 1999 at 3:30 p.m. in Courtroom C–502, 1929 Stout Street, Denver, Colorado.